No. 83-73

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

HOMER V. MARTIN and LORETTA MARTIN,
d/b/a MARTIN REALTY,

            Plaintiff and Appellants,

      -vs-

COMMUNITY GAS AND OIL COMPANY, INC.,

            Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Ravalli,
              The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            Datsopoulos, MacDonald & Lind, Missoula, Montana

      For Respondent:

            Boone, Karlberg & Haddon, Missoula, Montana

_____

                  Submitted on Briefs:  June 2, 1983

                              Decided:  August 24, 1983

Filed:  AUG 24 1983

_Ethel M. Harrison_
_____
            Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This case comes on appeal from a summary judgment rendered in the District Court of the Fourth Judicial District, Ravalli County. The pertinent parties to the action are appellant Martin Realty (Martin) and respondent Community Gas and Oil Co., Inc. (Community). For the reasons stated below, we affirm the judgment of the District Court.

Martin arranged for the sale of a tract of land from Community to the Life Evangelistic Association (Life Evangelistic) for a price of $1,168,926. On October 6, 1975, Community and Life Evangelistic entered into a contract for deed for the sale of the land. The contract for deed called for annual payments according to a particular schedule. In addition, the contract for deed contained a "deed release" provision allowing Life Evangelistic to obtain tracts of ten acres or more upon the payment of $1,000 per acre. The deed release provision also contained the following sentence:

> "It is specifically understood and agreed that any such payment (deed release) made to the Escrow Agent shall not relieve the Buyer of the obligation to make the next annual payment on the purchase and sale price and of interest as herein provided for."

On October 8, 1975, Martin and Community executed a written agreement, drafted by Community, which outlined the terms of Martin's commission incident to the sale of land to Life Evangelistic. Because Life Evangelistic was unable to make the entire down payment from which Martin's 6 percent commission was to be paid, Martin agreed to payment of the commission over a period of time. The agreement indicated that receipt of the commission payments would occur as each payment under the contract for deed was made by Life Evangelistic. In particular, the commission contract stated:

> "It is specifically understood that Community Gas will not be responsible to you for any of the commission payments specified above unless and until the Buyer makes the payment from which the commission payment is to be made." (emphasis added)

Pursuant to these two documents, Life Evangelistic made its first payment on the date the contract for deed was signed and Martin received the corresponding commission payment. The next two payments were made, although not on the dates specified in the contract for deed and the commission contract, and Martin received the corresponding commission payments. Community's final payment to Martin was to occur on December 6, 1978, upon Life Evangelistic making a $110,000 payment to Community. Life Evangelistic was unable to make the December 6 payment, although it did make payments for deed releases both prior to and for several months following the due date.

On February 15, 1979, Community and Life Evangelistic entered into a modification agreement extending the time for payment to July 31, 1979. Life Evangelistic paid $25,000 at execution of the agreement but failed to make a payment due on April 15, 1979. As a result, Community declared the contract forfeited and closed the escrow. On July 11, 1979, the parties made another attempt at extending the due date. When Life Evangelistic missed a payment under that agreement, Community deemed money received to be "rent" and repossessed the land on August 31, 1979.

Martin brought this action in District Court contending that it was entitled to the last commission payment because Community actually received more money from Life Evangelistic than was required to trigger the final payment under the commission contract of October 8, 1975. Specifically, Martin asserted that Community was obliged to count the money paid for "rent" and deed releases toward the $110,000 amount originally due on December 6, 1978, because at the time of execution of the commission agreement the parties did not intend to exclude these amounts.

Community argued that Martin was paid everything due under the commission agreement of October 8, 1975, because, by the terms of that agreement, conditions precedent to the payment of any additional commission were not met.

Before commencement of a jury trial, the court granted

Community's motion in limine to exclude all evidence as to the intent of the parties to the commission contract except the commission contract itself and contract for deed. In addition, the trial court concluded that although deed release payments for less than ten acres accepted before default on the contract for deed could be counted towards Life Evangelistic's annual payments, those amounts were substantially insufficient to constitute $110,000 and thereby trigger Martin's last commission payment. As a result of these rulings, the trial court granted Community's motion for a summary judgment.

Martin now asserts that the trial court erred in its ruling to exclude extrinsic evidence of the intent of the parties to the commission contract. Specifically, Martin contends that the contract for deed and commission contract cannot be read together because in order for two contracts to be read as one, the parties must be the same for both. Thus, the only agreement the trial court should have considered is the commission agreement between Martin and Community which Martin argues is ambiguous on its face because it does not indicate whether the parties would consider deed release payments or rent towards annual payments under the contract for deed. Therefore, because of the alleged ambiguity, the trial court erred in disallowing extrinsic evidence of the parties' intent at the time of entering into the commission contract.

Generally, when a contract is reduced to a writing that is plain and unambiguous, the intent of the parties is to be ascertained from that writing alone if possible. Section 28-3-303, MCA; Merritt v. Merritt (1974), 165 Mont. 172, 526 P.2d 1375. Moreover, the parol evidence rule provides that the terms of a written contract cannot be altered or contradicted by extrinsic evidence subject to certain recognized exceptions. Ambiguity is an exception to the parol evidence rule. Section 28-2-905, MCA; Payne v. Buechler (1981), ____ Mont. ____, 628 P.2d 646, 38 St.Rep. 799.

- 4 -

The trial court examined the commission contract and the contract for deed and determined the contract for commission of October 8, 1975, was not ambiguous. The contract stated:

> "It is specifically understood that Community Gas will not be responsible to you for any of the commission payments specified above <u>unless and until the Buyer makes the payment from which the commission payment is to be made</u>." (emphasis added)

Clearly, the words of the agreement show that it was the intent of the parties that the commission payments be contingent upon payments owed under the contract for deed. The commission contract cannot be construed otherwise. Payne v. Buechler, supra. Ambiguity only exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Keiser v. State Bd. of Regents of Higher Educ. (1981), ____ Mont.____ , 630 P.2d 194, 38 St.Rep. 674; Williams v. Ins. Co. of North America (1967), 150 Mont. 292, 434 P.2d 395. Because the language of the commission contract was clear and unambiguous it was the duty of the trial court to apply the language, as written, to the facts of the case and decide accordingly. Section 1-4-101, MCA; Kartes v. Kartes (1981), _____ Mont.____ , 636 P.2d 272, 38 St.Rep. 1941; Danielson v. Danielson (1977), 172 Mont. 55, 560 P.2d 893. Thus, the trial court by way of Community's motion in limine, properly disallowed extrinsic evidence of the parties' intent that would modify, alter, or contradict the terms of the written commission contract.

Martin argues further that because the trial court looked to the contract for deed in making its decision, additional evidence of the parties' intent should have been allowed. In determining the terms of a contract, however, the court was allowed to refer to the circumstances under which it was made and the matter to which it relates. Section 28-3-402, MCA; Mathis v. Daines (1982), ____Mont. ____, 639 P.2d 503, 39 St.Rep. 73. Application of this rule does not <u>ipso facto</u> open the door to nonapplication of the parol evidence rule. On the contrary, it only aids the court in ascertaining whether there is an ambiguity in the

contract. The contract for deed in paragraph 16 relating to deed release payments states, ". . . that any such payment made to the Escrow Agent shall not relieve the Buyer of the obligation to make the next annual payment."

Once it was clear to the trial court that deed release payments made under the contract for deed were not to be counted toward the annual payments, it properly concluded that the commission contract was not ambiguous and that it governed the intent of the parties. Extrinsic evidence could only be considered if the commission agreement had, on its face, appeared to be ambiguous or uncertain. Hill Cattle Corp. v. ~~Killorian~~ (1927), *Killorn (jh)* 79 Mont. 327, 256 P. 497.

In addition, the appellant argues that the commission agreements could not have been considered along with the contract for deed because the parties to the two agreements were not the same. See 28-3-203, MCA. However, it was not the purpose of the trial court to examine the contract for deed in order that it be taken together with the commission contract as a single agreement. Rather, the contract for deed was utilized to determine if the commission contract was ambiguous, and 28-3-402, MCA, provides that a contract "may be explained by reference to the circumstances under which it was made and the matter to which it relates."

Although Martin asserts that the commission agreement should be construed most strongly against Community, it has long been held that to interpret the language of a contract against the draftor, the draftor must cause the uncertainty. Parkhill v. Fuselier (1981), ____ Mont. ____, 632 P.2d 1132, 38 St.Rep. 1424; Glacier Campground v. Wild Rivers, Inc. (1978), 182 Mont. 389, 597 P.2d 689. In the case at bar the trial court properly held that the commission contract lacked any uncertainty.

In his reply brief, Martin maintains that, in any event, the commission agreement does not contain a valid condition precedent and, therefore, payment of the commission must be made.

Martin argues that the contract language providing that Community would not be responsible for making any commission payments "unless and until the Buyer [Life Evangelistic] makes the [contract] payment . . ." establishes only a _time_ for payment and not a _condition_ _precedent_ to payment. Appellant cites a list of cases from other jurisdictions for the proposition that time contingencies alone will not excuse payments. See, e.g., Mignot v. Parkhill (1964), 237 Or. 450, 391 P.2d 755.

We do not disagree with appellant's statement of the law with respect to time contingencies. Nevertheless, we believe the agreement does establish a specific and unambiguous condition precedent. The parties agreed that Community would not make commission payments "unless and until" Life Evangelistic fulfilled its duties under the contract for deed. The word "unless" suggests that one has a reservation or an option to change one's mind provided a certain event occurs. See, Black's Law Dictionary 1378, (rev. 5th ed. 1979). By use of the word "unless" Community reserved the right to withhold commission payments in the event that Life Evangelistic failed to fulfill its contractual duties. The time contingency, which arises from the use of the word "until", does not come into play until the condition precedent occurs. Cases relied upon by appellant speak to contracts containing only time contingencies. See, e.g., _Mignot_, supra. Community was acting within contractual bounds by withholding the final commission payment unless Life Evangelistic came up with the final buyer's payment.

Finally, Martin argues that because it did not receive the final commission payment of $23,378.52 on top of the $46,757.04 it had previously received, it was somehow subjected to an "abhorent" forfeiture. In order for a forfeiture to occur, however, the party whose property is divested must have a right in that property. See, Ridgeway v. City of Akron (1940 Ohio Ct. App.), 42 N.E.2d 724, 726. Martin cannot claim a right to the final commission payment. Any right he might have obtained was

conditioned on the final payment by Life Evangelistic under the contract for deed. Since there was no valid contract payment, there was no enforceable right in the commission payment. With no enforceable right, Martin cannot make a valid claim that he has suffered a forfeiture.

In sum, we find no reversible error, and therefore affirm.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -