No. 93-489

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

WESTFORK CONSTRUCTION COMPANY,

      Plaintiff and Appellant,

   v.

NELCON, INC., and UNITED STATES
FIDELITY AND GUARANTY COMPANY,

      Defendants and Respondents.

FILED

JUN 28 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

        James C. Bartlett, Hash, O'Brien & Bartlett,
Kalispell, Montana

     For Respondents:

        Robert J. Phillips, Phillips & Williams,
Missoula, Montana


                 Submitted on Briefs:  April 14, 1994

                        Decided:  June 28, 1994

Filed:

_____
          Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Subcontractor Westfork Construction Company filed an action in the Fourth Judicial District, Missoula County, for contract damages against contractor Nelcon, Inc., and its bonding company, United States Fidelity and Guaranty (Fidelity). Westfork alleged that it was entitled to damages arising out of its subcontract agreement with Nelcon for Westfork to clear acreage and retain the timber on the acreage, and the subsequent discovery that timber had been removed. Westfork appeals the directed verdict and judgment and attorney fee award entered for Nelcon and Fidelity.

We affirm.

The sole issue on appeal is whether the District Court erred when it granted respondents' motion for a directed verdict on the basis that the evidence established that appellant received all the payment it was entitled to under the written agreement.

On October 5, 1987, Nelcon entered an agreement with the State of Montana to complete a highway construction project known as Elk Hills-Lyon Springs in Lincoln County, and granting Nelcon the standing timber within the right-of-way. The project required the highway to be straightened and widened. Prior to this agreement, in mid-September 1987, Nelcon inspected the project and found timber to be standing on the site.

Westfork placed a bid for a subcontract with Nelcon to clear and grub the project grounds in preparation for excavation. Westfork's written bid dated October 2, 1987, offered a price of

2

$1200 per acre on the approximately 70 acre project area, plus the right-of-way timber.

As a result of the bid, Nelcon and Westfork entered into a subcontract dated October 5, 1987, providing for payment of $84,000 for clearing and grubbing the approximately 70 acre area at $1200 per acre. The subcontract did not refer to the timber. However, Nelcon concedes that its representatives agreed that Westfork "could do with the timber" as it "pleased."

In mid-October 1987, it became known to the State, Nelcon, and Westfork that the timber was owned by Champion International and had been removed from the area. In response to this information, Westfork sent a letter to Nelcon stating that it would complete the job for $1700 per acre due to the absence of timber. Although the letter was received by Nelcon, no response was ever given. Westfork commenced the job and completed the clearing and grubbing.

At about the same time that Westfork sent the letter to Nelcon, Nelcon filed a claim with the State concerning the missing timber. After negotiations, the State offered to settle the issue with Nelcon by paying them $22,359.63 for the missing timber, which included the value of the timber, plus Nelcon's costs in determining the amount of missing timber in the area. Of the $22,359.63 timber settlement, Nelcon paid Westfork $19,859.63 after retaining $2500 as markup costs.

Westfork filed an action against Nelcon and Fidelity alleging damages due to the modified contract terms wherein Nelcon agreed to pay at the rate of $1700 per acre due to the absence of timber,

thus owing Westfork $15,277.47, plus interest. In the alternative, if the contract was found to have not been modified, then Westfork alleged it was entitled to receive damages for the missing right-of-way timber under the subcontract agreement with Nelcon.

A jury trial began February 10, 1993. At the close of Westfork's case-in-chief, the District Court granted Nelcon's and Fidelity's motion for a directed verdict. In granting the directed verdict, the court noted that Westfork did not argue that the agreement should not be enforced because it was unconscionable or fraudulent, and found that the subcontract between Nelcon and Westfork constituted the entire agreement. The court found that Sections 7 and 8 of the subcontract between Nelcon and Westfork specifically provided for the resolution of any changed circumstances or construction claims, and Section 8 specifically provided that Westfork was bound to Nelcon to the same extent that Nelcon was bound to the State whenever any claims or disputes arise out of the performance of the contract. The court also found that the subcontract provided that Nelcon could not be liable to Westfork for its work on the project for any amount greater than the amount recovered from the State by Nelcon, less markup, and that Westfork received all the payments it was entitled to under the subcontract. Judgment was entered on March 22, 1993.

Did the District Court err when it granted respondent's motion for a directed verdict on the basis that the evidence established that appellant received all the payment entitled to under the written agreement?

4

When this Court reviews a directed verdict granted pursuant to Rule 50(a), M.R.Civ.P., it looks to see if the evidence leads to only one conclusion. "If only one conclusion is reasonably proper, then the directed verdict is proper." Semenza v. Leitzke (1988), 232 Mont. 15, 18, 754 P.2d 509, 511 (quoting Cremer v. Cremer Rodeo Land & Livestock Co. (1979), 181 Mont. 87, 92, 592 P.2d 485, 488). A directed verdict is properly granted when the "evidence is so insufficient in fact to be insufficient in law." Semenza, 754 P.2d at 511 (quoting Parini v. Lanch (1966), 148 Mont. 188, 191, 418 P.2d 861, 863). In our review of a directed verdict for a defendant, we will view the evidence in the light most favorable to the plaintiff, and if the evidence tends to establish the case according to the plaintiff's pleading, this Court will reverse the district court's order. Cremer, 592 P.2d at 488.

Both Westfork and Nelcon agree that although there is no written agreement concerning the grant of timber to Westfork, both parties understood that the main contract between Nelcon and the State provided that Nelcon could retain any merchantable timber on the right-of-way, and Nelcon conceded that Westfork "could do with the timber" as it "pleased." Westfork argues that the parties resolved their dispute concerning the missing timber by modifying the subcontract price from $1200 per acre to $1700 per acre, as evidenced by the letter Westfork sent to Nelcon on October 28, 1987. Westfork also contends that Nelcon representatives were aware that Westfork was performing the job, and therefore, Nelcon impliedly accepted the $1700 modification by its failure to

5

respond. Therefore, Westfork asserts that there was sufficient evidence for the jury to conclude that the parties resolved their dispute concerning the absent timber and agreed that the job would be completed for $1700 per acre.

Nelcon, on the other hand, argues that the written contract was clear and unambiguous and provided all the terms of the agreement between the parties, and that both Westfork and Nelcon are experienced in the area of bidding and contracting construction jobs. Nelcon also argues that there is no evidence in the record that Nelcon executed any acceptance of Westfork's letter to modify the subcontract price terms.

A written contract may be altered by another written contract or by an executed oral agreement. Section 28-2-1602, MCA. The record reveals that during the trial the District Court did not allow Westfork's offer of the October 28, 1987, letter as evidence that the parties modified their agreement price to $1700 per acre. The court limited the letter's relevance to show the parties were aware the timber was gone and were negotiating the value of the timber. The court also determined that the letter was evidence of a proposal, not a modification. Westfork does not argue that the court erred when it limited the letter's relevance, and our search of the record provides no evidence of written acknowledgement or acceptance by Nelcon to Westfork's proposal.

An oral agreement modifying the written agreement must be fully executed to meet with the provision within § 28-2-1602, MCA. Additionally, an executed oral agreement requires full execution on

6

both sides of the agreement. Kraft v. Hodson (1992), 254 Mont. 262, 264, 836 P.2d 1234, 1236. Here, Nelcon paid Westfork $1200 per acre for the clearing and grubbing completed, the amount specified in the written subcontract—not the alleged modified amount of $1700 per acre. Therefore, the alleged modification amount was not fully executed by both parties.

The District Court found that the subcontract between Nelcon and Westfork provided all the terms of the agreement. The following provision in the agreement provides for disputes concerning changes and extra work:

> 7A. Contractor [Nelcon] may at any time by written order of Contractor's authorized representative, and without notice to the Subcontractor's [Westfork's] sureties, make changes in, additions to, and deletions from the work to be performed under this Subcontract and Subcontractor shall promptly proceed with the performance of this Subcontract so changed. Any increase or decrease of the Subcontract price or time resulting from such change or extra work shall be agreed upon in writing by the parties hereto and, if mutual agreement is not possible, the questions of entitlement to additional time or to a change in compensation and the amount thereof shall be determined as provided in the Disputes Clause of this Agreement . . . .

The provision in Section 8 is titled "Disputes" and states in pertinent part:

> 8A. In the event of any dispute or claim between the Contractor [Nelcon] and the Owner [the State] which directly or indirectly involves the work required to be performed by Subcontractor [Westfork] under this subcontract, or in the event of any dispute or claim between Contractor and Subcontractor <u>which directly or indirectly involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Prime Contract and by any and all procedures and resulting decisions, findings</u>

7

or determinations made thereunder by the person so authorized in the Prime Contract or by an administrative agency, board or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency, board or court. . . . It is expressly understood and agreed in connection with the determination of such claims or disputes that as to any work done by the Subcontractor. . . . Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor, less any markups on costs incurred by Contractor.

. . . .

8C. In the event either party institutes suit in court against the other party, or against the surety of such party, in connection with any dispute or matter arising under this Subcontract, the prevailing party shall be entitled to recover its attorneys' fees, in addition to other relief granted by the court. [Emphasis added].

Where the language of the subcontract terms relative to the dispute resolution and recovery limits was plain and its meaning apparent, the trial court had the duty to declare that meaning and not leave it to the speculation of the jury. Section 1-4-101, MCA; Martin v. Community Gas and Oil Co., Inc. (1983), 205 Mont. 394, 399, 668 P.2d 243, 245. Where contract provisions are unambiguous, the courts have no authority to insert provisions in, or delete provisions from, the contract. In re Marriage of McKeon (1992), 252 Mont. 15, 826 P.2d 537. In the interpretation of contracts, each provision within the contract must be given effect. First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 818 P.2d 384.

The language of Section 7 was not ambiguous or vague, but provided for any dispute contingency in the work to be done or payments to be made, to be resolved by the procedure in Section 8. Section 8 was not ambiguous or vague, but provided that the parties

8

were bound to each other to the same extent that Nelcon is bound to the State by the prime contract terms, and by all procedures and resulting decisions, findings, or determinations made thereunder, and that Westfork could not recover more from Nelcon than Nelcon could recover from the State. Section 8 also provided that the party who prevails in a court proceeding shall be awarded attorney fees.

Westfork contends that Section 8 does not apply because Nelcon never invoked the claim procedure provided within the subcontract. However, the record shows Nelcon submitted a Notice of Potential Claim to the State and subsequently entered negotiations and resolved the timber dispute. After the State paid Nelcon the $22,359.63 timber settlement, pursuant to the agreement terms, Nelcon paid Westfork $19,859.63--the entire settlement amount less Nelcon's markup total of $2500.

We hold that the record supports the District Court's interpretation of the subcontract and the evidence was legally sufficient to withdraw the case from the jury. The evidence within the record provides only one reasonable conclusion--that the written subcontract provided the terms of the agreement between the parties.

We hold that the District Court properly granted the directed verdict in favor of Nelcon and Fidelity, and properly granted attorney fees.

Affirmed.

_William B. Hunt_
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10