No. 94-547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

GEORGE D. TYNER,

      Plaintiff and Appellant,

   v.

PARK COUNTY, CARLO CIERI,
individually and as employee of
Park County, JAMES HUNT, individually
and as employee of Park County, and
LARRY LOVELY, individually and as
employee of Park County,

      Defendants and Respondents.

FILED

JUN 19 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
             In and for the County of Park,
             The Honorable Roy C. Rodeghiero, Judge presiding

COUNSEL OF RECORD:

      For Appellant:

         Mark L. Guenther and David Barnhill, Nash, Guenther
         and Zimmer, Bozeman, Montana

      For Respondents:

         Norman H. Grosfield, Utick & Grosfield, Helena,
         Montana

Submitted on Briefs:  April 27, 1995

Decided:  June 19, 1995

Filed:

_____
             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

George D. Tyner (Tyner) appeals the decision of the Sixth Judicial District Court, Park County, granting defendants' motion for a directed verdict on his civil rights claim. Tyner also appeals the jury verdict finding that he was wrongfully discharged but awarding zero damages. We affirm.

The issues are:

1. Did the District Court err in granting defendants' motion for a directed verdict?

2. Did the jury err in awarding Tyner zero damages on his wrongful discharge claim?

Tyner went to work for the Park County Road Department in May 1990. His duties included maintenance, machinery operation, and general labor. The Road Department supervisor was Denis Brandon. Tyner successfully completed a six-month probationary period, after which he received a pay increase.

In February 1992, Tyner received a "payroll transfer," whereby he received his pay from the Incinerator Department rather than from the Road Department. Park County officials testified that the payroll transfer was merely a cooperative, resource-sharing maneuver enabling the Incinerator Department to help pay for work done on its machinery by Tyner and other Road Department employees. Tyner testified that he believed that the payroll transfer was in fact a promotion that would result in more authority, increased pay and more direct contact with the Incinerator Department. Following the payroll transfer, Tyner continued to report to the Road

Department and received his work assignments from Brandon.  Tyner received an increase in pay for one month following the transfer. The raise was subsequently rescinded.   Park County officials informed Tyner that the raise was not in the budget.

On December 9, 1992, Tyner reported to the Road Department for work.   At approximately 7:00 a.m., Brandon delivered the work assignments for the day.   Tyner was assigned to hard-face grader blades.   Tyner testified that he put on his coveralls, proceeded to the welding area and began preparing the grader blades for welding. As he prepared to weld, he noticed his welding face shield was dirty.   He walked toward the parts room to get a towel or rag to clean the shield.

On his way to the parts room he stopped in the Road Department office and placed a call to Lawrence Oset, supervisor of the County Landfill.   The previous day Tyner had worked at the landfill for Oset, welding on a new shed being built there.   Tyner claimed that Oset asked him to call to determine if Oset needed him at the landfill again on December 9.   Oset does not recall whether he asked Tyner to call that morning.   Oset told Tyner they would not be working on the shed due to inclement weather.

Tyner testified that Brandon entered the office and told him he was not to use the telephone.   Tyner left the office and proceeded to the parts room.   While Tyner was in the parts room looking for a rag, Brandon came in and again confronted Tyner concerning his use of the telephone.   Brandon told Tyner he was not to receive personal calls on the office phone and that the use of

3

the phone was disruptive to the operation of the shop. Brandon stood in the only doorway to the parts room and continued to criticize Tyner's work. Tyner stepped toward Brandon, placed his hands on Brandon's chest and pushed him through the doorway. Brandon did not fall to the ground, but was pushed back several feet. Immediately after the push, Tyner claims Brandon stated that "this little incident will cost you your job."

Brandon claims that he did not follow Tyner from the office to the parts room. Rather, shortly after Tyner left the office, Brandon observed he was not at the welding table and went looking for him. He found Tyner in the parts room. He asked Tyner why he had called Oset. Tyner told him he called to ask Oset if he needed him to weld at the landfill. Brandon told Tyner that he had been assigned his work order for the day and that was to perform hard-face welding on the grader blades. It was at this point Tyner pushed Brandon through the doorway.

Tyner and Brandon disagree concerning exactly how far away Tyner was when he stepped toward Brandon and the force of the push. Following the incident, Tyner requested a meeting with the County Commissioners.

Brandon called commissioners Carlo Cieri and James Hunt. The third commissioner, Larry Lovely, was not reached by telephone and only learned of the meeting upon arriving at work.

At approximately 8:00 a.m. on December 9, Brandon and Tyner met with Cieri, Hunt and Lovely. The meeting lasted approximately thirty minutes. Brandon and Tyner each told the commissioners

4

their version of the incident. The commissioners considered Brandon's and Tyner's stories to be sufficiently similar to make further investigation of the incident unnecessary. Tyner admitted that, following an argument with Brandon, he pushed him through the doorway. After the meeting, Tyner and Brandon returned to work at the county shop.

Following the meeting with Brandon and Tyner, the commissioners met with the Park County Attorney for approximately thirty minutes. The county attorney informed the **commissioners** that discipline for pushing a superior could range from a written letter of reprimand to termination.

The county commissioners decided to terminate Tyner based on their meeting with Brandon and Tyner and their meeting with the county attorney. Tyner was terminated on December 9, the same day the pushing incident occurred. Following oral notification of termination, Tyner requested and received a written letter of termination.

Tyner filed a complaint against Park County and the **commissioners** individually in the Sixth Judicial District Court, Park County. The complaint alleged violation of Tyner's civil rights in violation of 42 U.S.C § 1983 and wrongful discharge in violation of Montana's Wrongful Discharge **from** Employment Act, §§ 39-2-901 through -915, MCA. At trial after Tyner's case-in-chief, the District Court granted defendants' motion for a directed verdict on the civil rights claim. Following trial, the jury found that Tyner had been wrongfully discharged from his employment; however,

the jury went on to conclude that Tyner suffered zero damages as a result of the wrongful termination.

Issue 1

Did the District Court err in granting defendants' motion for a directed verdict on Tyner's civil rights claim?

We have recently set forth our standard of review of a district court's granting of a directed verdict as follows:

> [This Court] looks to see if the evidence leads to only one conclusion. "If only one conclusion is reasonably proper, then the directed verdict is proper." [Citations omitted.] A directed verdict is properly granted when the "evidence is so insufficient in fact to be insufficient in law."

Westfork Const. Co. v. Nelcon, Inc. (1994), 265 Mont. 398, 401, 877 P.2d 481, 483.

Tyner argues that the pushing incident was merely a pretext for firing him and the underlying reason for his termination stemmed from constitutionally-protected statements he had made in the past. Tyner's civil rights claim is based on two main allegations.

First, Tyner points out that he ran for county commissioner against the incumbent commissioner James Hunt. Hunt and Tyner finished first and second out of four candidates in the primary election. Tyner, therefore, earned the right to run against Hunt in the general election. Tyner ran on a platform advocating improved county roads and increased communication between the public and the county commissioners. Hunt defeated Tyner by a wide margin. Tyner was terminated approximately one month after the general election. Tyner argues that his running against Hunt for

6

county commissioner and the statements he made during the campaign were motivating factors in his termination.

Tyner's second allegation stems from comments he made to commissioner Cieri concerning a sewer treatment plant in Gardiner, Montana. Tyner had observed the construction of the sewer treatment plant and specifically the settling ponds. Tyner told Cieri that he believed someone was getting paid off in connection with the job. Tyner believed that the construction was of substandard quality and was taking much longer than necessary. Tyner did not repeat these allegations to anyone but Cieri. Cieri testified that he did not recall a conversation with Tyner concerning the construction of the sewer plant. Tyner claims that his discharge was motivated by his comments to Cieri concerning the construction of the sewer plant.

The defendants deny any motivation for terminating Tyner other than his pushing Brandon. The commissioners told Tyner at their meeting that pushing a supervisor was a firing offense. The Park County Attorney concurred that the incident was sufficient grounds for termination.

To prevail on his civil rights claim, Tyner was required to prove that his constitutionally-protected speech was a substantial or motivating factor for his termination. Mt. Healthy City Board of Ed. v. Doyle (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471. In granting defendants' motion for a directed verdict, the District Court found that Tyner had not presented any evidence that he was discharged for any reason other than pushing Brandon.

While determinations of motive are generally questions of fact reserved for the jury, when only one conclusion can reasonably be derived from the evidence presented, a directed verdict is proper. Semenza v. Leitzke (1988), 232 Mont. 15, 18, 754 P.2d 509, 511.

Tyner's evidence consists of the fact that he ran for county commissioner against commissioner Hunt. During the campaign, he made remarks critical of the operation of Park County government. Tyner also alleges that he confronted commissioner Cieri concerning the construction of the Gardiner sewer treatment plant.

While the parties do not contest the constitutionally-protected nature of these activities, Tyner has failed to link these activities to his discharge. Tyner cites Ware v. Unified School Dist. (10th Cir. 1989), 881 F.2d 906, for the proposition that a reasonable inference can be drawn from the fact that the reasons given for the discharge are unsupported by the evidence. Tyner further argues that because the jury found that he was wrongfully discharged pursuant to Montana's Wrongful Discharge From Employment Act, the reasons given for his discharge were unsupported by the evidence.

We disagree with Tyner's argument. While the jury found that Tyner was discharged in violation of Montana's Wrongful Discharge From Employment Act, such a finding does not address the motivations behind the firing. The evidence presented at trial concerning Tyner's wrongful discharge claim focused on the procedure by which the commissioners fired Tyner, not their motivation. The evidence revealed that Park County did not have a written employ-

8

ment manual, Tyner had an excellent employment record prior to December 9, and other employees received less discipline for similar conduct.

While the procedure the commissioners followed in terminating Tyner came under strict scrutiny during trial, the motivating factor was clear. The commissioners, in their meeting with Tyner, in their meeting with the Park County Attorney, in their letter of termination and at trial, uniformly indicated that Tyner was discharged because he pushed Brandon. Tyner presented no evidence to link his discharge to the statements he had made. Tyner and commissioner Hunt testified that their campaign was an amicable one that Hunt easily won. Tyner presented nothing but his own speculation and conjecture to connect his campaign for county commissioner with his discharge.

Likewise, Tyner has not tied his discharge to the statements he made to commissioner Cieri concerning the Gardiner treatment plant. Cieri testified that he did not even remember the conversation taking place. Tyner testified that he did not discuss his concerns over the treatment plant with anyone else.

We hold that Tyner failed to present sufficient evidence by which a jury could conclude that Tyner's speech was a substantial or motivating factor in his discharge. We therefore conclude that the District Court properly granted defendants' motion for a directed verdict.

Did the jury err in awarding Tyner zero damages on his wrongful discharge claim?

Following trial, the jury determined that Tyner had been wrongfully discharged in violation of Montana's Wrongful Discharge From Employment Act. The jury went on to award zero damages. Tyner argues that he is entitled to a new trial on the issue of damages because the jury verdict was not supported by substantial evidence.

In affirming an award of zero damages in a wrongful discharge case, we stated in Dawson v. Billings Gazette (1986), 223 Mont. 415, 726 P.2d 826:

> The jury decides what evidence to accept and what evidence to reject.

> "In considering a motion for new trial, the trial court is not to weigh the evidence where conflicting evidence is presented. Yerkich v. Opsta (1978), 176 Mont. 272, 274, 577 P.2d 857, 859. Rather, the trial court's discretion to grant a new trial for insufficiency of the evidence is exhausted when it finds substantial evidence to support the verdict. [Citations omitted.] Where conflicting evidence is present, it is an abuse of the trial court's discretion to grant a new trial. [Citation omitted.] We will not substitute our view of the evidence for that of the jury where that evidence furnishes reasonable grounds for different conclusions."

Dawson, 726 P.2d at 828-29.

Section 39-2-905, MCA, sets forth the damages available for a wrongful discharge claim as follows:

> [T]he employee may be awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest thereon. Interim earnings, including amounts the employee could have

earned with reasonable diligence, must be deducted from the amount awarded for lost wages. . .

Defendants presented evidence of mitigating factors to offset Tyner's damage claim. First, Tyner was unemployed for only five months, approximately four months after his discharge and an approximately one-month layoff after finding new employment. Second, Tyner turned down an employment opportunity during the period after his discharge before accepting new employment. Finally, his new employment was at a higher wage than he earned while working for Park County.

Defendants presented sufficient evidence to justify a zero damage award. We conclude that the jury verdict was supported by substantial evidence. We therefore affirm the decision of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11

June 19. 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Mark L. Guenther, Esq. & David Barnhill, Esq.
Nash, Guenther & Zimmer
P.O. Box 1330
Bozeman, MT 59771-1330

Norman H. Grosfield, Esq.
Utick & Grosfield
P.O. Box 512
Helena, MT 59624-0513

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy