No. 97-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 124


SAM DOBLE, d/b/a DOBLE LOGGING,

Plaintiff and Appellant,

v.

CECIL BERNHARD, BERNHARD BUSINESS TRUST,

Defendant and Respondent.


APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, The Honorable Michael C.
Prezeau, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

S. Charles Sprinkle; Douglas Law Firm, P.C.;
Libby, Montana

For Respondent:

Thomas R. Bostock; Warden, Christiansen, Johnson &
Berg, PLLP; Kalispell, Montana


Submitted on Briefs: January 8, 1998

Decided:   May 20, 1998

Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.    In April 1992, plaintiff and appellant Sam Doble, d/b/a Doble Logging, filed an action in the District Court for the Nineteenth Judicial District in Lincoln County against Cecil Bernhard, Bernhard Business Trust.  Doble, a logging contractor, brought suit against Bernhard alleging breach of a logging contract, and breach of the implied covenant of good faith and fair dealing.  Bernhard subsequently filed a motion for summary judgment, which the District Court granted in an April 14, 1997, order.  Doble filed a motion to alter or amend the court's judgment, which the court denied on June 25, 1997.  It is from the court's order granting Bernhard's motion for summary judgment, as well as from the court's order denying Doble's motion to alter or amend, that Doble presently appeals.  For the reasons stated below, we reverse.

¶2.    Generally at issue on appeal is whether the District Court erred in granting Bernhard's motion for summary judgment.  More specifically, we find the following issues dispositive:

¶3.    1.    Did the District Court err in concluding that the logging contract entered into by Doble and Bernhard expired on July 1, 1989?

¶4.    2.    Did the District Court err in concluding the parties had not entered into an enforceable oral agreement altering the terms of the logging contract?

¶5.    3.    Did the District Court err in concluding that, as a matter of law, Bernhard had not breached the covenant of good faith and fair dealing?

FACTUAL AND PROCEDURAL BACKGROUND

¶6.    On December 31, 1987, Sam Doble, an independent contract logger, entered into a logging agreement with his uncle, Cecil Bernhard, who owned 480 acres of timberland located in Lincoln County, Montana.  The December 31, 1987, logging contract set forth the terms pursuant to which Doble was to log portions of Bernhard's property.  The contract provided, in pertinent part, as follows:

LOGGING AGREEMENT

Agreement made on the 31 day of December, 1987 between Cecil Bernhard and Bernhard Business Trust, a Montana Business Trust, organized and existing under the laws of the State of Montana, herein referred to as "Company" and Sam Doble an individual doing business under the name of Doble Logging herein referred to as "contractor."

In consideration of the mutual promises hereinafter stated, company and contractor agree as follows:

LOCATION

Contractor shall log designated timber from the following described real

property: said property being described on the attached Exhibit "A" and by this reference made a part hereof. Parcels or pieces of these areas are to be issued to the contractor for logging as agreed upon between contractor and company.  Company reserves the right to limit area or volume to approval of logging job completed and to performance bond advanced and to time contractor will need to complete the job.

### TERM OF CONTRACT

The contract shall extend for a period of eighteen (18) months but considerable progress must be made on the contract by 60 days after approval by FSLIC as time is of the essence.  An extension of six (6) months can be obtained at the discretion of company.
. . . .

### STARTING DATE

Contractor shall begin logging within thirty (30) days from the date of approval of FSLIC unless otherwise agreed to by the parties.
. . . .

### MISCELLANEOUS

. . . .

4.   Time is of the essence of this contract.

¶7.    According to Doble, the Federal Savings and Loan Insurance Company (FSLIC) approved the contract sometime in the late summer of 1988.  Doble spent that fall completing another logging project, and thus did not begin logging Bernhard's property until approximately November 15, 1988.  Between November 15, 1988 and July 14, 1989, Doble's logging efforts generated a total of roughly $264,800 in gross proceeds.

¶8.    In June 1989, Doble learned of yet another logging project available near Big Sandy, in eastern Montana.  In mid-June, Doble met in Kalispell with Bernhard and Gregory Paskell, Bernhard's attorney.  Doble asserts that, during this meeting, he told both Bernhard and Paskell of his interest in pursuing the Big Sandy logging project, but that Bernhard and Paskell urged him to complete Bernhard's project instead.  Doble continued logging on Bernhard's property until July 14, 1989, when Bernhard mailed Doble a written notice terminating the contract.

¶9.    Doble filed an action in District Court, seeking a preliminary injunction in an attempt to prevent Bernhard from removing him from the project.  The District Court denied Doble's motion for temporary injunctive relief on August 3, 1989, and Doble subsequently vacated Bernhard's property.

¶10.    Doble initiated the present action on April 28, 1992, asserting claims against Bernhard for breach of contract and breach of the covenant of good faith and fair dealing.
Roughly two and one-half years later, on November 22, 1994, Bernhard filed a motion

to
dismiss for failure to prosecute.  Little developed, and on October 30, 1996, approximately four and one-half years after Doble filed his complaint, Bernhard filed a
second motion to dismiss for failure to prosecute.   In light of the public policy favoring
resolution of disputes on their merits, and in light of Doble's renewed efforts in pursuing
his case, the court denied Bernhard's motion to dismiss in a January 29, 1997, order.

¶11.    Bernhard filed a motion for summary judgment on March 3, 1997.  On April 14, 1997, the District Court entered an order granting Bernhard's motion for summary judgment.  On April 16, 1997, the court supplemented its earlier order, and entered a document explaining the rationale in support of its decision to grant Bernhard's motion
for summary judgment.  Doble subsequently filed a motion to alter or amend the court's
summary judgment ruling, which the court denied in a June 25, 1997, order.  Doble filed
a timely notice of appeal on July 2, 1997.

DISCUSSION

¶12.    This Court's standard of review in appeals from summary judgment rulings is de novo.  Treichel v. State Farm Mut. Auto. Ins. Co. (1997), 280 Mont. 443, 446, 930 P.2d 661, 663 (citing Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc.  (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court.  Treichel,
280 Mont. at 446, 930 P.2d at 663 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903).

¶13.    In proving that summary judgment is appropriate:
    The movant must demonstrate that no genuine issues of material fact exist.
    Once this has been accomplished, the burden then shifts to the non-moving
    party to prove by more than mere denial and speculation that a genuine
    issue does exist.  Having determined that genuine issues of material fact do
    not exist, the court must then determine whether the moving party is
    entitled to judgment as a matter of law.  [This Court] reviews the legal
    determinations made by the district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903.

¶14.    Moreover, the "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles
that entitle the moving party to judgment as a matter of law and all reasonable inferences
are to be drawn in favor of the party opposing summary judgment."  Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

ISSUE 1

¶15.    Did the District Court err in concluding that the logging contract entered into
by Doble and Bernhard expired on July 1, 1989?

¶16.    In granting Bernhard's motion for summary judgment, the District Court
concluded  that the contract at issue took effect on December 31, 1987, and extended for a
period of eighteen months, terminating on July 1, 1989.  The court determined that the
terms of the contract were clear and unambiguous on this point, and rejected Doble's
assertion that the contract did not take effect until its approval by the FSLIC.

¶17.    On appeal, Doble argues the court erred in concluding the contract expired on
July 1, 1989, instead asserting that the question of when the contract commenced, and
when it expired, constitutes a genuine issue of material fact precluding summary
judgment in Bernhard's favor.  Doble asserts that those portions of the logging agreement
which govern the contract's term and its starting date are in conflict and, therefore,
ambiguous.  More specifically, Doble argues that portion of the contract which provides
the term of contract "shall extend for a period of eighteen (18) months," conflicts with
that portion mandating that the "[c]ontractor shall begin logging within thirty (30) days
from the date of approval of FSLIC."  Doble argues it was the parties' intent that the
contract not take effect until approved by the FSLIC.  Doble asserts the FSLIC did not
approve the contract until late summer of 1988, and correspondingly argues that the
eighteen-month contract term did not expire until well after the July 1, 1989, date relied
upon by the District Court.  Doble thus maintains that whether the parties intended the
contract to take effect on the date it was signed, or upon approval by the FSLIC, is a
question of material fact precluding summary judgment in Bernhard's favor.

¶18.    In contrast, Bernhard argues the terms of the contract were clear, and asserts
the contract took effect when entered by the parties on December 31, 1987, and expired
eighteen months later on July 1, 1989.  Because the terms of the contract are clear on this
point, Bernhard asserts, the parol evidence rule precludes the court from looking beyond
the terms of the contract itself for evidence of the parties' intent.

¶19.    It is well-settled by this Court that, "[w]here the language of an agreement is
clear and unambiguous and, as a result, susceptible to only one interpretation, the

duty of the court is to apply the language as written." Carelli v. Hall (1996), 279 Mont. 202, 209, 926 P.2d 756, 761 (citing Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551). Whether or not an ambiguity exists is a question of law for the court to decide. Carelli, 279 Mont. at 209, 926 P.2d at 761. Only where an ambiguity exists may the court turn to extrinsic evidence of contemporaneous or prior oral agreements to determine the intent of the parties. Carelli, 279 Mont. at 209, 926 P.2d at 761; Monte Vista Co. v. Anaconda Co. (1988), 231 Mont. 522, 529, 755 P.2d 1358, 1362. We have recognized that "[a]n ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." Wray v. State Comp. Ins. Fund (1994), 266 Mont. 219, 223, 879 P.2d 725, 727 (quoting Morning Star Enterprises v. R.H. Grover (1991), 247 Mont. 105, 111, 805 P.2d 553, 557). If the terms of the contract are clear, however, "there is nothing for the courts to interpret or construe" and the court must determine the intent of the parties from the wording of the contract alone. Wray, 266 Mont. at 223, 879 P.2d at 727; Marten v. Community Gas & Oil Co. (1983), 205 Mont. 394, 398, 668 P.2d 243, 245.

¶20. That portion of the logging agreement governing its effective term provides that the contract would "extend for a period of eighteen (18) months." We conclude, as did the District Court, that the foregoing language clearly and unambiguously establishes that the contract took effect when signed by the parties on December 31, 1987, and was to extend for a period of eighteen months. That the agreement required Doble to "begin logging within thirty (30) days from the date of approval of FSLIC" did not alter the explicit starting date of the contract term, but simply set forth the time by which Doble was to begin his logging operations. In other words, as the District Court reasoned, the FSLIC's approval of the contract was merely a "condition precedent to the commencement of logging activity," and did not delay the effective date of the contract or otherwise "extend the term of the contract." Similarly, we conclude that portion of the contract requiring Doble to have made "considerable progress . . . on the contract by 60 days after approval by the FSLIC" does not alter the fact that the contract took effect when signed by the parties on December 31, 1987.

¶21. We thus conclude, as did the District Court, that the contract entered into

by the
parties on December 31, 1987, expired pursuant to its own terms on July 1, 1989. Based
on the foregoing, we conclude that Doble has failed to demonstrate the presence of a
genuine issue of material fact with respect to the question of when the eighteen-month
contract term commenced and expired sufficient to withstand Bernhard's motion for
summary judgment.

ISSUE 2

¶22.    Did the District Court err in concluding the parties had not entered into an
enforceable oral agreement altering the terms of the logging contract?

¶23.    With respect to the modification of written contracts,   28-2-1602, MCA,
specifically provides that "[a] contract in writing may be altered by a contract in writing
or by an executed oral agreement, and not otherwise."  For an oral agreement, such as the
one alleged by Doble in the present case, to effectively alter the terms of a written
contract, that oral agreement must be fully executed "on both sides of the agreement."
Westfork Const. Co. v. Nelcon, Inc. (1994), 265 Mont. 398, 402-03, 877 P.2d 481, 484
(citing Kraft v. Hodson (1992), 254 Mont. 262, 264, 836 P.2d 1234, 1236.)  We have
recognized that "[a]n oral agreement modifying a written agreement is executed when its
terms have been fully performed."  Eagle Watch Investments, Inc. v. Smith (1996), 278
Mont. 187, 194-95, 924 P.2d 257, 261 (quoting Lemley v. Allen (1983), 203 Mont. 37, 41,
659 P.2d 262, 265).

¶24.    On appeal, Doble argues the District Court erred in concluding there existed
"no enforceable oral modification of the Logging Agreement which would extend the
term of the contract."  Doble asserts that, even if the contract as drafted would have
expired on July 1, 1989, the parties entered into an oral agreement pursuant to which they
effectively altered the date by which the contract would expire.  More specifically, Doble
asserts that during his meeting with Bernhard and Bernhard's attorney in June 1989, both
Bernhard and his attorney "orally agreed to modify the contract in such manner as to
require that [Doble] forsake the Big Sandy job to complete the Bernhard job."  Thus, as
he did before the District Court, Doble argues he and Bernhard orally modified the terms
of the written contract, extending the term of the agreement to permit Doble to continue
working with Bernhard until all of Bernhard's timber had been harvested.  Doble argues
Bernhard then "breached the contract by wrongfully terminating [Doble's] performance"
by way of the July 14, 1989, notice of termination.  In light of the foregoing, Doble
asserts there exists a genuine issue of material fact as to whether the parties

executed an
oral agreement that altered the terms of the written contract, thereby extending the date by
which it would terminate.

¶25.    Bernhard, in contrast, argues there exists neither a written agreement nor an executed oral agreement which would serve to effectively alter the terms of the agreement
as originally written.  Bernhard argues "Doble simply alleges that Bernhard and his attorney insisted that he perform the Logging Agreement as originally written," and has
therefore failed to even raise a question of fact as to whether the parties altered and
extended the original eighteen-month contract term.  Bernhard concedes that "the only oral agreements that would make any difference to the outcome of this case were if Bernhard were to have orally agreed to extend the term of the contract," but argues Doble
has failed to even allege the existence of an agreement to that effect.  Rather, Bernhard
argues Doble has himself conceded that the two never discussed extending the eighteen-month contract term, and asserts Doble has "not even allege[d] an express agreement by
Bernhard to modify the contract, but submits allegations that amount to no more than vague and unsubstantiated inferences."

¶26.    As noted, Doble argues Bernhard orally agreed to effectively extend the contract term to permit Doble to "complete the Bernhard job" by removing all remaining
harvestable timber.  Thus, although Bernhard concludes otherwise, Doble has indeed alleged the existence of an oral agreement with Bernhard effectively extending the term
of the contract.  For the purposes of the pending appeal, we must determine whether Doble has supported this allegation "with substantial and material evidence raising a genuine issue of material fact."  Herron v. Columbus Hospital (Mont. 1997), 943 P.2d 1272, 1274, 54 St. Rep. 840, 841 (citing Clark v. Eagle Systems, Inc. (1996), 279 Mont.
279, 284, 927 P.2d 995, 998).  In evaluating the offered evidence, we will draw all reasonable inferences in Doble's favor.  Herron, 943 P.2d at 1274, 54 St. Rep. at 841 (citing Clark, 279 Mont. at 284, 927 P.2d at 998).

¶27.    As reflected by the following deposition testimony, Doble has conceded that he and Bernhard never specifically discussed extending the eighteen-month contract term:

     Q [Bernhard's attorney]: Did your uncle ever specifically agree to extend
     the term of the contract beyond what's set out in the contract?

  A [Doble]: What do you mean "extend the term"?

     Q: The contract provides that a term of 18 months, unless extended.  Was
     there ever any discussion regarding an extension of a contract?

     A: No.

¶28.   Instead, Doble described the conversation during which he alleges he and Bernhard agreed to modify the contract so that it would remain in effect until all timber had been harvested from Bernhard's property as follows:

Q [Bernhard's attorney]: So the first time that you told them about the Big Sandy job would have been in Mr. Paskell's office in June of 1989.  Who was present at the time that you had this discussion?

A [Doble]: Like Mr. Bernhard said, there was Mr. Paskell, Mr. Bernhard and myself in his office.  My wife was waiting out in the waiting room.  But she remembers when we came out and we was finishing up conversation, like everybody does, she remembers Paskell said to me that my main priority was with Cecil and staying there and getting that debt paid off.  You know, if I wanted to sign off the contract completely, I could, but otherwise just stick to it and don't look right nor left.  Just finish it.

Q: You knew that there was time limit to the contract that you had with Cecil, didn't you?

A: Oh, yes.  And I knew that I was way ahead of schedule.

Q: The contract was due to expire 18 months after December --

A: After it had been accepted by FSLIC.

¶29.   Although Doble conceded that he and Bernhard never specifically discussed extending the eighteen-month contract term, Doble asserted Bernhard and his attorney nevertheless led him to believe they would effectively extend the contract until all the trees had been harvested from Bernhard's property:

Q: [Bernhard's attorney]: So as I understand what you're saying, it was a statement made by Cecil or a statement made by Greg Paskell during the course of conversation that you had in Paskell's office in June of 1989 to the effect that you were to stay on that -- stay focused on Cecil's project?
A [Doble]: Right.

Q: And because of that statement, you felt that they were promising -- that Cecil was promising you the rest of the job until completion?

A: Cecil and Paskell.

Q: Okay.  Anything other than that statement?

A: They led me to believe that they [were] perfectly happy the way things were going, the amount of volume of timber, everything, except they wanted more money.  You know, up until then everything was rosy, and then there was -- then it became a few minor things with the clipper and you have got to take more and more of this small timber and stay focused on your job right here.

¶30.    Thus, although Doble concedes that neither he nor Bernhard specifically discussed extending the eighteen-month contract term, he nevertheless asserts Bernhard and his attorney led him to believe they wished him to work beyond the contract's pending July 1, 1989, termination date.  For example, Doble alleges they asked him to forego the Big Sandy job and instead complete the Bernhard project, which Doble asserts he interpreted as an invitation to continue logging until all of the harvestable timber had been removed.  Moreover, although Doble agrees they never specifically discussed extending the contract's precise expiration date, he asserts Bernhard and his attorney led him to believe they were happy with the way things were going, and urged him to stay focused on the Bernhard project.  Whether Bernhard and his attorney agreed to permit Doble to continue logging his property until all harvestable timber had been removed, thereby agreeing to effectively extend the contract term, is a question of material fact precluding summary judgment in Bernhard's favor.

¶31.    Doble additionally argues that the fact that Bernhard sent him a written notice, dated July 14, 1989, terminating the contract means Bernhard himself believed the contract was still in effect at the time and, therefore, supports his assertion that he and Bernhard had in fact entered an enforceable oral agreement amending the logging contract.  Doble also argues the termination notice's reference to "other oral agreements" amounts to a concession by Bernhard that the written contract was in fact orally modified.

¶32.    In response, Bernhard maintains he sent the written notice of contract termination simply to get Doble off of his property, and asserts the reference to "other oral agreements" was to conversations during which he and Doble had specifically identified the parcels of land Doble was to log.

¶33.    Whether Bernhard sent Doble written notice terminating the contract because he believed the contract was still in effect pursuant to their alleged oral agreement, or whether he did so merely because he could think of no other way to get Doble off his land, is a question of fact.  Moreover, whether the notice's reference to "other oral agreements" was intended to refer to their alleged oral agreement to extend the term of the contract, or to conversations during which he and Doble had specifically identified the parcels of land Doble was to log, is an additional question of fact precluding summary judgment in Bernhard's favor.

¶34. Based on the foregoing, we conclude there exists a question of fact as to whether Doble and Bernhard entered into an enforceable oral agreement altering the terms of the logging contract, and accordingly hold the District Court erred in granting Bernhard's motion for summary judgment on this issue.

ISSUE 3

¶35. Did the District Court err in concluding that, as a matter of law, Bernhard had not breached the covenant of good faith and fair dealing?

¶36. In granting Bernhard's motion for summary judgment, the District Court concluded that, "[o]nce the contract between the parties expired on July 1, 1989, there was no contractual relationship between the parties and therefore no breach by Bernhard of the covenant of good faith and fair dealing." As the court noted, Doble alleged in his pretrial order that "[t]he termination by Defendants of [Doble's] logging of the timber was a breach by the Defendants of the implied covenant of good faith and fair dealing which, in turn, constituted a breach by Defendants of the altered contract." The court recognized that, although "a breach of the covenant of good faith and fair dealing does not necessarily require that there first be a breach of the contract, the covenant does require that there be a contract in existence in the first instance."

¶37. Because the court concluded the logging contract had expired on July 1, 1989, it accordingly concluded there was no contract between the parties at the time Bernhard terminated Doble's logging efforts on July 14, 1989. The court thus held that "Doble's cause of action for breach of the covenant of good faith and fair dealing must necessarily fail with the Court's ruling that the term of the contract expired, and there was no oral contract to extend the written contract."

¶38. In light of our conclusion that the District Court erred in determining Doble failed to establish a question of fact regarding the presence of an executed oral agreement extending the eighteen-month contract term, we conclude the court erred in granting summary judgment in Bernhard's favor with respect to Doble's claim for breach of the implied covenant of good faith and fair dealing.

¶39. Based on the foregoing, we reverse the District Court's order granting summary judgment in Bernhard's favor and remand to the District Court for further proceedings consistent with this opinion.

                    /S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  KARLA M. GRAY



Justice W. William Leaphart, specially concurring.


¶40.    I concur in the Court's reversing the summary judgment under issues number
two and three since there exists a question of fact as to whether the parties entered into an
enforceable oral agreement altering the terms of the logging contract.  I disagree,
however, with the Court's holding on issue number one; that is, whether there was an
ambiguity as to when the logging contract commenced.
¶41.    Bernhard contended, and the Court agrees, that the contract provided that:
"[t]he contract shall extend for a period of eighteen months . . . " and that this language
clearly meant that the term commenced upon signing.  Doble, on the other hand, focused
on the contract language that "considerable progress must be made on the contract by 60
days after approval by FSLIC as time is of the essence."  As Doble points out, the
contract further  provides "Contractor shall begin logging within thirty (30) days from the
date of approval of FSLIC unless otherwise agreed to by the parties."  Based upon these
two provisions which reference FSLIC approval, Doble asserts that there was an
ambiguity as to whether the term commenced upon signing (December 1987) or upon
FSLIC approval (summer of 1988).
¶42.    Whether an ambiguity exists is a question of law for the court to decide.
Carelli v. Hall (1996), 279 Mont. 202, 209, 926 P.2d 756, 761.   The Court holds that the
specified term of 18 months "clearly and unambiguously establishes that the contract took
effect when signed by the parties on December 31, 1987, and was to extend for a period
of eighteen months."   I disagree.  I find it incongruous to hold, as does the Court, that the
contract term commenced some 6 months before Doble received FSLIC approval to begin
logging.  When the contract required Doble to begin logging within 30 days of FSLIC
approval, FSLIC approval was the event which would trigger commencement of the 18-
month term.
¶43.    In any event, despite my view that commencement of the term was clearly
tied to FSLIC approval, the most that can be said of the contract is that it is reasonably
subject to two different interpretations.  That being the case, an ambiguity exists, see

Wray v. State Comp. Ins. Fund (1994), 266 Mont. 219, 223, 879 P.2d 725, 727, and the court erred in entering summary judgment. Accordingly, I would reverse on the first as well and the second and third issues.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler concurring in part and dissenting in part.

¶44. I concur with the majority's decision to reverse the judgment of the District Court; however, I disagree with majority's reasons for doing so. Specifically, I concur with the opinion of Justice Leaphart that the contract is at least ambiguous with regard to the date on which the contract commenced. However, I disagree with the majority's disposition of Issue 2. Doble concedes there was no agreement to extend the term of the contract, and nothing allegedly said by the defendant or his attorney effectively modified the contract so as to extend its date of expiration.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson joins in the foregoing dissenting opinion.

/S/ JAMES C. NELSON