No. 98-711

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 236N

---

ROGER DVORAK,

Plaintiff and Appellant,

v.

FIRST INTERSTATE BANK OF BILLINGS,

N.A., a National Banking Corporation,

NORTHWEST TRUCKING & TRAILER SALES,

INC., a Montana Corporation, and JOHN DOE, a

transportation agent hired by NORTHWEST

TRUCKING & TRAILER SALES, INC.,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Roger William Dvorak, Pro Se; Billings, Montana

For Respondents:

L. B. Cozzens and Matthew F. McLean, Crowley, Haughey, Hanson,

Toole, & Dietrich, P.L.L.P.; Billings, Montana

Submitted on Briefs: June 19, 1999

Decided: September 30, 1999

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶The Plaintiff, Roger Dvorak, brought this action in the District Court for the Thirteenth Judicial District in Yellowstone County to recover contract damages from the Defendant, First Interstate Bank of Billings. The District Court awarded summary judgment to the Defendant. Dvorak appeals from the judgment of the District Court. We affirm the District Court.

3. ¶The issue on appeal is whether the District Court erred by granting summary judgment to First Interstate Bank of Billings.

## FACTUAL BACKGROUND

1. ¶On June 1, 1987, Roger Dvorak and his wife Patricia Dvorak purchased a 1987 Peterbilt tractor-trailer truck from Northwest Trucking & Trailer Sales. Subsequently, in January 1989, the Dvoraks refinanced their obligation to Northwest Trucking pursuant to a Retail Installment Contract. On January 25, 1989, Northwest Trucking assigned the fully guaranteed Retail Installment Contract to First Interstate Bank of Billings pursuant to the following contractual provision:

If this assignment is made with full recourse and guaranty, Seller guarantees payment under this contract to Lender as follows: If Buyer defaults for any reason under the terms of any provision of the contract assigned to Lender, Seller agrees to repurchase the contract for the amount then outstanding.

1. ¶Pursuant to the terms of the Retail Installment Contract, the Dvoraks were to tender the first payment to First Interstate Bank on February 25, 1989. The Dvoraks

immediately became delinquent in their payments, by failing to make the February 25, 1989 and March 25, 1989 payments. Over the next six months, the Dvoraks made sporadic payments to First Interstate Bank. At no time from February 25, 1989, to September 27, 1989, were the Dvoraks current in their payment obligations to First Interstate Bank. First Interstate Bank sent the Dvoraks a letter advising of their delinquency on five separate occasions. Additionally, in three of those letters, First Interstate Bank advised the Dvoraks that if payment was not received the account would be closed and the Peterbilt tractor-trailer would be repossessed.

2. ¶On September 26, 1989 Roger Dvorak attempted to tender payment of $6000 to First Interstate Bank. First Interstate Bank refused Dvorak's payment.

3. ¶As of September 27, 1989, the Dvoraks' total past due payments amounted to $6156.33. On that date, First Interstate Bank exercised its contractual right to reassign the Retail Installment Contract to Northwest Trucking. Northwest Trucking then tendered the remaining balance due pursuant to the Retail Installment Contract to First Interstate Bank. On June 7, 1990, Northwest Trucking repossessed the Peterbilt tractor-trailer from the Dvoraks.

4. ¶On December 6, 1990, James Merchant, an assistant vice president for First Interstate Bank, prepared an internal memo to file in response to the Dvoraks' expressed complaints to First Interstate Bank in November 1990 regarding the reassignment of the Retail Installment Contract to Northwest Trucking. Merchant's memo outlined the Dvoraks' account history related to the Retail Installment Contract. Specifically, Merchant's memo recounts a conversation between Merchant and an employee of Northwest Trucking:

On 9/20[/89], Jim [Merchant] talked to Clark at Northwest Peterbilt. Clark indicated that he had talked to Patricia Dvorak and solicited a possible rewrite with same payments. The customers declined this offer. The dealer indicated that he would try to get at least one payment from [the Dvoraks] this month. Jim informed Clark that if he misses this commitment to pay by 9/27, the Bank will "allow very little slack in the future."

1. ¶Roger Dvorak subsequently filed this action against First Interstate Bank alleging that First Interstate Bank had promised him that he had until September 27, 1989 to become current on all payments and First Interstate Bank's subsequent refusal to accept Dvorak's payment on September 26, 1989 was a breach of contract. Additionally, Dvorak claimed that First Interstate Bank's reassignment of the Retail Installment Contract to Northwest Trucking was a breach of the implied covenant of

good faith and fair dealing.

2. ¶First Interstate Bank moved for summary judgment on the basis that there was no modification to the Retail Installment Contract and that the reassignment of the Contract was expressly allowed pursuant to the terms of the Contract. The District Court agreed and concluded that there was no legal modification of the Contract and that the reassignment was expressly allowed pursuant to the terms of the Contract. The District Court awarded summary judgment for the reason that without a modification to the Contract, Dvorak could not prove a breach of the Contract. Additionally, the District Court concluded that because the reassignment was executed pursuant to the express terms of the Contract, there could be no breach of the implied covenant of good faith and fair dealing.

## STANDARD OF REVIEW

1. ¶Our standard of review on appeal from summary judgment orders is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ. P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

2. ¶Did the District Court err when it awarded summary judgment to First Interstate Bank?

3. ¶The District Court concluded that the modifications alleged by Dvorak, including the purported oral agreement to allow Dvorak until September 27, 1989 to bring his payments current, and the internal memo by a First Interstate Bank employee, did not satisfy the statutory requirements to modify a written contract.

4. ¶A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise. § 28-2-1602, MCA. An oral agreement modifying the written agreement must be fully executed to be effective. *Doble v. Bernhard* (1998), 289 Mont. 80, ¶ 23, 959 P.2d 488, ¶23. Additionally, an executed oral agreement requires full execution on both sides of the agreement. *Doble*, ¶23 (citing *Westfork Constr. Co. v. Nelcon, Inc.* (1994), 265 Mont. 398, 402-03, 877 P.2d 481, 484). We have recognized that an oral agreement modifying a written agreement is executed when its terms have been fully performed. *Doble*, ¶23. However, because the bank refused Dvorak's tender of payment on September 26, 1989, the oral agreement, if it existed, was not fully executed.

5. ¶Additionally, Dvorak appears to contend that the internal memo written by First

Interstate Bank employee Merchant is sufficient to establish a modification of the Retail Installment Contract by a written contract.

6. ¶The essential elements of a contract, as defined by § 28-2-102, MCA, are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) adequate consideration. *Interstate Prod. Credit Assoc. v. Abbott* (1986), 223 Mont. 405, 408, 726 P.2d 824, 826. Merchant's internal file memo clearly does not meet the statutory standards of a written contract. Merchant prepared the memo, dated December 6, 1990, nearly 15 months after First Interstate Bank had reassigned the Retail Installment Contract to Northwest Trucking and 6 months after the date of the tractor-trailer's repossession. Further, the content of the memo merely establishes that on September 20, 1989, Merchant conversed with an employee of Northwest Trucking regarding the Dvoraks' payment delinquencies and stated that "the Bank will allow very little slack in the future." The memo contains no discussion or suggestion that the Bank modified the Retail Installment Contract with the Dvoraks. The Dvoraks were not a party to the memo, nor were the Dvoraks aware of its existence at that time.

7. ¶Based on the foregoing, we conclude, as did the District Court, that no oral or written modification of the Retail Installment Contract occurred and that pursuant to the written Contract's terms, First Interstate Bank was entitled to summary judgment dismissing Dvorak's contract claim.

8. ¶Dvorak also contends that First Interstate Bank breached the implied covenant of good faith and fair dealing by reassigning the Retail Installment Contract to Northwest Trucking. The Retail Installment Contract explicitly grants First Interstate Bank the right to reassign the Retail Installment Contract to Northwest Trucking should the Dvoraks be in default. At the time of reassignment, it is undisputed that the Dvoraks were delinquent in their payments and therefore were in default.

9. ¶We have held that every contract, regardless of type, contains an implied covenant of good faith and fair dealing. *Story v. City of Bozeman* (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. For every contract not covered by a more specific statutory provision, the standard of compliance is that contained in § 28-1-211, MCA:

The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

1. ¶Although the District Court held that the bank was entitled to summary judgment

on the bad faith issue, for a reason that was not necessarily correct, we conclude that it reached the correct result, and that as a matter of law, based on the facts of this case, there was no evidence from which a trier of fact could have found that the bank acted in a commercially unreasonable or dishonest manner.

2. ¶We conclude that First Interstate Bank's reassignment of the Contract was within reasonable commercial standards and honest in fact and therefore was not a breach of the covenant of good faith and fair dealing.

3. ¶Based on the foregoing, we conclude that Roger Dvorak failed to bring forth substantial and material evidence raising a genuine issue of material fact that the Retail Installment Contract was modified orally or by written contract, or that there was a breach of the implied covenant of good faith and fair dealing. We further conclude that, because First Interstate Bank established the absence of genuine issues of material fact in that regard, it is entitled to summary judgment dismissing Dvorak's claims. Accordingly, we hold that the District Court did not err when it granted summary judgment to First Interstate Bank.

4. ¶The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON