No. 02-730

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 216

PESCHEL FAMILY TRUST,

        Plaintiff and Respondent,

    v.

MARK P. COLONNA, Individually and
MARK P. COLONNA, D.D.S., P.C.

        Defendant and Appellant,

    v.

HERBERT C. PESCHEL, individually and as trustee
of the Peschel Family Trust,

        Counterclaim Defendant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and for the County of Flathead, Cause No. DV-00-570A,
                 The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Bruce Fredrickson, Angela K. Jacobs, Crowley, Haughey, Hanson, Toole &
                Dietrich, P.L.L.P., Kalispell, Montana

        For Respondent:

                Sean S. Frampton, Morrison & Frampton, Whitefish, Montana

                        Submitted on Briefs:  May 22, 2003
                             Decided:  August 21, 2003

Filed:

            _____
                         Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Respondent, Peschel Family Trust, the "Trust", sued the Appellants, Dr. Mark P. Colonna, "Colonna", and Mark P. Colonna, D.D.S., P.C., the "Corporation", for damages arising out of the breach of a lease. The District Court entered summary judgment that the Corporation breached the lease by vacating the leased building and fixed damages, including attorney's fees. Then, following a non-jury trial, the District Court entered judgment piercing the corporate veil and held Colonna personally liable for those damages.

¶2    Colonna appeals from the judgment of the District Court. The Trust demands attorney's fees on appeal. We affirm the District Court and grant the Trust's prayer for fees on appeal.

¶3    The following issues are raised:

¶4    1. Did the District Court err when it pierced the corporate veil and held Colonna personally liable for breaching the lease with the Trust?

¶5    2. Is the Trust entitled to attorney's fees on appeal?

FACTUAL AND PROCEDURAL BACKGROUND

¶6    Dr. Mark Colonna, a dentist, formed Mark P. Colonna, D.D.S., P.C., the Corporation, to render professional dental services on September 9, 1993. Colonna and Laura, his former wife, were named as the Corporation's directors in the articles of incorporation. Colonna was also the president and sole shareholder. Laura served as the vice-president, secretary and treasurer. However, the corporate by-laws were signed only by Colonna. He did not have a formal employment agreement with the Corporation and did not receive wages; nor did the Corporation issue him W-2 forms. Instead of receiving a salary, Colonna, from time-to-time,

2

received interest payments on the loans discussed below in paragraphs ten and eleven.

¶7      About the same time the Corporation was formed, Colonna began practicing dentistry in a building owned by the Trust.  The building was shared with  Dr. Herbert Peschel and Dr. Pam Lilly.  Dr. Peschel also served as the trustee for the Trust.

¶8      On July 12, 1996, the Colonnas separated and Laura resigned from her duties with respect to the Corporation.  Subsequently, the articles of incorporation were amended and Colonna became the sole director of the Corporation. He assumed the positions of vice-president, secretary and treasurer.  Laura's resignation was formally documented.

¶7      In September of 1996, the Corporation entered the lease at issue with the Trust for dental office space and equipment located in the Trust's building.  The lease provided that the Corporation would lease the property and dental equipment from September 1, 1996, through August 31, 2001, for $1,700 per month.  The Corporation's decision to enter into the lease was not documented in the corporate records.

¶8      After the lease was executed, Colonna shared the building with two other dentists, Dr. Peschel and Dr. Dale Bax.  According to Colonna's testimony, his business had grown significantly by the fall of 1998.  He then demanded possession of the entire property by letter.  Neither Dr. Peschel nor the Trust responded and Colonna vacated the building on November 30, 1998. The Corporation's decision to vacate, and discontinue paying rent, was not formally documented in the Corporation's records.  The District Court determined that the lease was not intended to include the entire property, which conclusion has not been challenged on appeal.

¶9      At nearly the same time, Colonna personally purchased another building to which he

3

moved his practice. He caused the Corporation to enter into a ten-year lease, as a tenant, with himself as landlord, on December 1, 1998, whereby the Corporation rented the new property. Rent was to be paid on a graduated scale beginning at $4,000 per month. Colonna assigned his personal liability to make payments on the new building to the Corporation. The Corporation made Colonna's mortgage payments on that property directly to the bank. Again, no formal corporate resolution authorized this arrangement.

¶10    Colonna testified that he loaned the Corporation $10,200.00 in 1996. The loan was not documented by a promissory note or security agreement. Colonna also said he loaned the Corporation $23,005.00 in 1998, and again loaned the Corporation $31,505.00 in 2000. Neither of the loans were documented in the Corporation's records. They were payable upon demand. At trial, Colonna's accountant attempted to correct the testimony of his client, stating that the payment of money in each case was a loan repayment to Colonna by the Corporation, rather than loans to the Corporation from Colonna. The District Court's findings indicate these transactions were, in fact, loans to the Corporation.

¶11    Colonna also loaned the Corporation $87,000.00 at an interest rate of 10%, which was documented by a promissory note dated December 14, 1998. Colonna loaned the Corporation an additional $60,185.81, at an interest rate of 15%, on May 31, 2001. The note provided that the loan would be paid in full by May 30, 2006. The two loans were payable upon demand as cash flow permitted. The Corporation's decisions to borrow money from Colonna were never documented through formal corporate minutes or resolutions.

¶12    The Corporation's records indicate that there were only three corporate meetings in its nine-year existence. No documentation indicates that the decisions to enter into and

4

subsequently breach the lease with the Trust were made by formal corporate resolution. Nor is there documentation to indicate that the decision to lease Colonna's new property was arrived at through a formal corporate resolution. However, Colonna asserts that he made the decisions as the Corporation's president, not as an individual.

¶13 There is evidence that a lease on a pickup truck used by Colonna was paid, at least in part, by the Corporation. The doctor testified that the Corporation only paid for the use of the vehicle to the extent that it was related to his business travel. Yet, he also claimed that the Corporation sponsored his professional bowling career and he used the pickup for travel to tournaments. The decision to sponsor Colonna's bowling was not formally documented in the corporate records.

¶14 The amended complaint against both Colonna and the Corporation alleges they were one and the same and, thus, both breached the lease of the Trust's property. The Corporation and Colonna filed a counterclaim in which they raised numerous affirmative defenses and alleged that they had been damaged when the Trust refused to relinquish full possession the leased building pursuant to the lease.

¶15 Colonna filed a motion for summary judgment in which he maintained that the Trust failed to allege sufficient facts to pierce the corporate veil. The Trust filed a motion for summary judgment and requested the court to conclude that the undisputed facts established that Colonna had breached the lease. The District Court denied Colonna's motion and granted the Trust's motion for summary judgment. It concluded that Colonna and the Corporation were not entitled to sole possession of the Trust property and that they had breached the lease when they vacated the property and stopped paying rent.

5

¶16 After a two-day bench trial in June of 2002, the District Court concluded that Colonna was the alter ego of the Corporation and the real party in interest under the lease. The court further found that it would be inequitable to permit Colonna to use the Corporation as a subterfuge to defeat public convenience or justify wrong. Consequently, the corporate veil was pierced and Colonna was held personally responsible to the Trust for the damages arising from the breach plus attorney's fees.

STANDARD OF REVIEW

¶17 This court reviews a district court's findings of fact to determine whether they are clearly erroneous. *Ace Leasing, Inc. v. Boustead*, 2002 MT 213, ¶ 16, 311 Mont. 285, ¶ 16, 55 P.3d 371, ¶ 16. In determining whether a court's findings are clearly erroneous, we will examine whether: (1) the findings are supported by substantial credible evidence; (2) whether the district court misapprehended the effect of the evidence; and (3) whether we are left with a definite and firm conviction that a mistake has been committed. *Berlin v. Boedecker* (1994), 268 Mont. 444, 455-56, 887 P.2d 1180, 1187. It is not a matter of whether this Court agrees with the district court's findings and conclusions. Our review considers whether those findings, when viewed in a light most favorable to the prevailing party, are supported by substantial credible evidence. *Stromberg v. Seaton Ranch Co.* (1972), 160 Mont. 293, 306, 502 P.2d 41, 48.

¶18 We review a district court's conclusions of law to determine if they are correct. *Ace Leasing*, ¶ 16.

DISCUSSION

ISSUE 1

¶19    Did the District Court err when it pierced the corporate veil and held Colonna personally liable for breaching the lease with the Trust?

¶20    Colonna contends that the District Court was incorrect when it concluded that he should be held personally liable for breaching the lease with the Trust. He maintains that the court incorrectly interpreted and applied the law to the facts of the case when it concluded that he was the alter ego of the Corporation. In the alternative, he contends that the court was incorrect when it concluded that the Corporation had been used for a fraudulent or otherwise wrongful purpose.

¶21    We note the conclusions of law from which Colonna appeals were mischaracterized by the District Court. Those conclusions of law are more accurately characterized as findings of fact. Therefore, review of these issues pursuant to the clear error standard is more appropriate than the conclusions of law standard initially invoked by Colonna.

¶22    This Court has developed a two-prong test to determine whether the circumstances of a case are appropriate for piercing the corporate veil. First, the trier of fact must find that the defendant was the alter ego, an instrumentality, or an agent of the corporation. *Berlin*, 268 Mont. at 458, 887 P.2d at 1188. Second, the trier of fact must find evidence that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Berlin*, 268 Mont. at 458, 887 P.2d at 1188 (citation omitted).

A.    *Was Colonna the alter ego of the Corporation?*

¶23    The following factors are considered when determining whether a shareholder is the alter ego of a corporation under the first prong of our inquiry:

    1.    Whether the shareholder owns all or most of the corporation's stock.
    2.    Whether the shareholder is a director and/or president of the

7

corporation.

3. Whether the shareholder makes all the corporate decisions without consulting the other directors or officers.

4. Whether the shareholder, officers and/or directors fail to comply with the statutory requirements regarding operation of the corporation.

5. Whether the shareholder's personal funds are commingled with the corporation's funds.

6. Whether the shareholder's personal credit and corporation's credit are used interchangeably to obtain personal and corporate loans.

7. Whether the shareholder's personal business records are not kept separate from the corporation's business records.

8. Whether the shareholder and corporation engage in the same type of business.

9. Whether the shareholder and corporation have the same address which is the address of shareholder's personal residence.

10. Whether the shareholder admits to third parties that the shareholder and the corporation are one in the same.

11. Whether the corporation's profits and earnings are distributed through means other than dividends.

12. Whether the corporation is undercapitalized.

13. Whether the parent and subsidiary have the same name.

14. Whether the parent and subsidiary have the same directors and officers.

*Meridian Minerals Co. v. Nicor Minerals, Inc.* (1987), 228 Mont. 274, 284, 742 P.2d 456, 462.

¶24    The above is not an exclusive list, and a court is not required to that find all of the factors have been satisfied to conclude a shareholder is the real party in interest. Nor does this Court adhere to the above factors in any particular fashion. Rather, they are factors to be considered along with the other evidence and circumstances of each individual case.

¶25    In *ECA Environ. Management v. Toenyes* (1984), 208 Mont. 336, 679 P.2d 213, this Court considered whether the veil of a subsidiary corporation, ECA, could be pierced to assign liability to the parent corporation, MMI. The record showed that MMI owned 100 percent of the capital stock in ECA; corporate formality had been abandoned; there were no minutes from corporate or shareholder meetings; MMI routinely transferred ECA funds to

its own accounts; ECA was undercapitalized and owed MMI a significant amount of money; and ECA's operations were financed by MMI. *Toenyes*, 208 Mont. at 347, 679 P.2d at 218-19. The above factors established sufficient control and domination of ECA by MMI to support the conclusion that ECA was the alter ego of MMI. *Toenyes*, 208 Mont. at 347, 679 P.2d at 219.

¶26 In *Drilcon, Inc. v. Roil Energy Corp., Inc.* (1988), 230 Mont. 166, 749 P.2d 1058, Drilcon sued White individually, alleging that White was the alter ego of Roil, Inc., and prayed for judgment that the corporate veil be pierced. The record indicated that Roil, Inc., was not sufficiently capitalized; White was the majority shareholder, an officer and a director of the corporation; White controlled all corporate activity without consulting the other officers and directors; White used his personal funds to pay corporate debts; and corporate formalities were not adhered to. Therefore, we affirmed the district court and concluded that White was the alter ego of Roil and that the first prong required to pierce the corporate veil had been satisfied. *Drilcon, Inc.*, 230 Mont. at 176-77, 749 P.2d at 1064.

¶27 In *Berlin*, 268 Mont. at 458, 887 P.2d at 1188-89, the defendant owned 97 percent of Boedecker Resources corporate stock; he was the president of the corporation; he exercised complete control of corporate operations; he executed all corporate transactions; he benefitted personally from many corporate transactions; and he intermingled personal and corporate assets and funds. Consequently, we concluded that the defendant was the alter ego of Boedecker Resources, satisfying the first prong of the inquiry. *Berlin*, 268 Mont. at 458, 887 P.2d at 1189.

¶28 Many of the determinative factors in *Toenyes*, *Drilcon* and *Berlin* are present in this

9

case. Only three meetings were held concerning corporate decisions over a nine-year period; Colonna exercised absolute authority over all corporate activities as the sole director and officer; Colonna was the Corporation's sole shareholder; Colonna loaned the Corporation significant sums of money indicating that the Corporation was undercapitalized and unable to meet its day-to-day obligations; payments were made directly from corporate accounts to satisfy Colonna's personal obligations under the guise that they were loan repayments; and there are no records indicating that Colonna was an employee of the Corporation or that he received wages. Moreover, Colonna personally benefitted from suspect corporate transactions–the vehicle lease and the Corporation's ten-year lease renting Colonna's own property. In each instant he was on both sides of the transaction and realized a personal benefit.

¶29 Colonna argues that the District Court placed too much weight on the fact that he did not strictly follow corporate formality. He argues that it would defy common sense to require the sole shareholder, director, and officer of a professional corporation to document every transaction and decision made on behalf of the corporation. We recognize that the corporation in this case was solely owned and run by Colonna, he was the only person authorized to make corporate decisions, and that some deviation from traditional corporate formality might be permitted, even though no election was made to make the Corporation a statutory close corporation under the Montana Close Corporation Act, § 35-9-101, et seq, MCA. However, a corporation must adhere to fundamental formalities, even when exclusively controlled by one individual, or the line between individual and corporation evaporates, as was the case here.

¶30 It was within the District Court's discretion to give substantial weight to the lack of corporate formality in its findings. This is not a case of minor deviations from corporate formality–Colonna abandoned almost all corporate formality. Moreover, the abandonment of corporate formality is only one factor supporting the finding that Colonna was the Corporation's alter ego. When placed alongside the further findings that the Corporation made direct payments for Colonna's debts, it was undercapitalized and borrowed money from its inception, and Colonna realized personal gain from many of his dealings with the Corporation, the finding that virtually no corporate records were kept becomes more significant.

¶31 The District Court's finding that Colonna was the alter ego of the Corporation is supported by substantial evidence. Therefore, we affirm the District Court's judgment that Colonna was the true party in interest and the alter ego of the Corporation.

B. *Was the corporate entity used as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud?*

¶32 Colonna maintains that the District Court was incorrect when it concluded that he used the Corporation as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud. He contends that there is no credible evidence to support the court's findings and conclusions on this issue.

¶33 The District Court's findings and conclusions with regard to the second prong of its inquiry are conclusory. However, careful review of its judgment in light of the record on appeal fully justifies the District Court's decision.

¶34 The corporate veil may not be pierced simply because an individual is the alter ego

11

of a corporation and true party in interest. There must be substantial evidence from which the trier of fact may find that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Berlin*, 268 Mont. at 457, 887 P.2d at 1188 (citation omitted).

¶35 Bad faith alone may be sufficient cause for piercing the corporate veil. *Toenyes*, 208 Mont. at 347, 679 P.2d at 219. In *Toenyes*, we concluded that MMI attempted to use ECA to avoid liability for breaching its contractual obligation. *Toenyes*, 208 Mont. at 348, 679 P.2d at 219. This was evidenced by the fact that ECA transferred its assets to MMI, effectively depleting the subsidiary of funds and assets, leaving insufficient funds to satisfy a judgment rendered against ECA. *Toenyes*, 208 Mont. at 348, 679 P.2d at 219. We noted that the second prong for piercing the corporate veil did not require a specific finding of fraudulent intent. *Toenyes*, 208 Mont. at 347, 679 P.2d at 219. Consequently, the creation of an undercapitalized shell subsidiary, that was not capable of satisfying its liability for a breach of contract, was sufficient to satisfy the requirements of the second prong. *Toenyes*, 208 Mont. at 348, 679 P.2d at 219. This is similar to what happened in the present case–the Corporation is incapable of satisfying the judgment against it because it was undercapitalized from its inception, suggesting that Colonna acted in bad faith.

¶36 In *Stromberg*, Matt Brown sued Seaton Ranch and Dorothy Seaton for breaching a real estate agreement. Brown alleged that the circumstances required the court to pierce Seaton Ranch's corporate veil and hold Dorothy Seaton personally liable for his damages. The district court pierced the corporate veil and held Ms. Seaton liable. We affirmed the district court's finding of bad faith based on the direct and circumstantial evidence indicating

12

that Seaton had negotiated directly with the buyer in order to avoid paying Brown's closing fees. *Stromberg*, 160 Mont. at 307-08, 502 P.2d at 49. In this case, the direct and circumstantial evidence permits an inference that Colonna acted in bad faith when he breached the lease with the Trust and caused the Corporation to enter into a ten-year lease with himself.

¶37 In *Drilcon*, we concluded that the record contained sufficient credible evidence to support the district court's finding that Mr. White used the corporate entity to justify wrong. We stated that Mr. White:

> hoped to gain when and if the oil well was successful. The well was dry and White now hopes to avoid the cost of drilling with an uncapitalized corporation. The jury was entitled to conclude that it would be inequitable or unjust for Drilcon to bear the loss in this case.

*Drilcon, Inc.*, 230 Mont. at 177, 749 P.2d at 1064.

¶38 Similar to the circumstances in *Drilcon*, it appears that Colonna wanted to have his cake and eat it too. He seeks to personally profit from renting his property to the Corporation and at the same time protect himself from liability with the undercapitalized corporation. As noted by the District Court, such a result would be inequitable.

¶39 In the present case, substantial credible evidence supports the District Court's conclusion that Colonna used the Corporation as a subterfuge to defeat public convenience or justify wrong. The record discloses numerous suspect corporate transactions from which Colonna received personal benefit. Colonna does not contest that his corporation, over which he exercised complete control, breached the lease with the Trust. The Corporation entered the lease for the new space with Colonna immediately after it left the Trust's building. By using the corporate entity, Colonna was able to charge his corporation rent for

13

a building he owned himself on a sliding scale, which in turn enabled him to make sure his corporation would never have sufficient assets to satisfy the Trust's judgment. Also, the nature of the loans he made ensured that the Corporation would not have sufficient assets to satisfy a judgment. The evidence clearly supports the District Court's determination that Colonna used the Corporation to justify wrong.

¶40 Where there is sufficient evidence to support a district court's findings and conclusions, it is not this Court's province to question that judgment. When the evidence is viewed in a light most favorable to the Trust, we conclude that there is sufficient evidence to support the District Court's decision to pierce the corporate veil and hold Colonna personally liable for breaching the lease with the Trust.

## ISSUE 2

¶41 Is the Trust entitled to attorney's fees on appeal?

¶42 Having prevailed on appeal, the Trust requests attorney's fees. The Trust maintains that as the prevailing party, it is entitled to reasonable attorney's fees on appeal pursuant to *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 51, 306 Mont. 321, ¶ 51, 34 P.3d 87, ¶ 51. In response, Dr. Colonna contends that attorney's fees are not appropriate because the lease agreement did not provide for attorney's fees on appeal.

¶43 An award of fees on appeal is not automatic. In *Transaction Network v. Wellington Tech. Inc.*, 2000 MT 223, 301 Mont. 212, 7 P.2d 409, we restated the proposition that attorney's fees arising out of a contract dispute on appeal are only appropriate when the contract contemplated that attorney's fees would be charged by the prevailing party on appeal. That case relied heavily upon *Diehl and Assoc. v. Houtchens* (1979), 180 Mont. 48,

14

588 P.2d 1014. In *Diehl*, we granted attorney's fees on appeal based on the following language: "'In case of such action on this contract, I . . . agree to pay such additional sum as the court, both trial and appellate, may adjudge reasonable as attorney fees.'" *Diehl*, 180 Mont. at 51, 588 P.2d at 1016.

¶44    The attorney's fees provision of the lease in question provides:

> 9. COSTS AND ATTORNEYS FEES. If by reason of any default on the part of the LESSEE it becomes necessary for the LESSOR to employ an attorney or in case LESSOR shall bring suit to recover any rent due hereunder, or for the breach of any provisions of this Lease, or to recover possession of the leased premises, or for the recovery of any damages occasioned by the LESSEES' acts of [sic] omission, or for any obligation of the LESSEE arising under the Agreement of [sic] by the law, then the LESSEE hereby agrees to pay the LESSOR all the costs in connection therewith including, but not limited to, reasonable attorneys fees and costs of any action, whether of [sic] not the action or actions proceed to judgment.

¶45    Similar to the contract provision at issue in *Transaction Network*, where attorney's fees were awarded on appeal, the present lease provides that "all the costs" in connection with "any action," including attorney's fees will be paid. *See Transaction Network*, ¶ 39. Thus, the lease contemplated that attorney's fees would be awarded to the successful party on appeal.

¶40    The judgment of the District Court is affirmed. This matter is remanded to the District Court for a determination of the reasonable attorney's fees on appeal which shall be added to the judgment.

/S/ JOHN WARNER

We Concur:

/S/ JIM REGNIER

15

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶41   I dissent. In its zeal to reach an equitable result, the Court has failed to properly apply the law.

¶42   The Court does not cite to, or even mention, a single finding of fact entered by the District Court in support of the conclusion that the corporate entity here was used as a "subterfuge to defeat public convenience, justify wrong or perpetuate fraud," *Berlin v. Boedecker* (1994), 268 Mont. 444, 458, 887 P.2d 1180, 1188, the second prong of the law's requirement (Issue 1B). The Court cannot do so because none were made by the District Court. Therefore, the Court purports to render its own findings of fact, which it bases upon "suggestion" (¶ 35), "inference" (¶ 36), and "appearances" (¶ 38), in order to avoid reversing an unsupported, and therefore erroneous, conclusion because "[a]s noted by the District Court, such a result would be inequitable." ¶ 38. Failing in our duty to correctly apply the law so that an inequitable result can be avoided is itself inequitable to all who rely on the law.

¶43   I agree that the District Court properly concluded that Colonna was the alter ego of the corporation, the first prong of the piercing test (Issue 1A). Indeed, all of the findings entered by the District Court provided factual support of the "alter ego" prong, notably, the lack of corporate meetings and minutes (Finding #5 and #9), Colonna's status as sole shareholder, director and officer (Finding #8), lack of documentation of the corporate decision to terminate the rental agreement (Finding #9), Colonna's failure to keep corporate obligations separate from personal obligations (Finding #11), failure to document corporate decisions (Finding #12), failure to document Colonna's status as an employee of the

17

corporation (Finding #13), three financial transactions suspected to be arms-length transactions between Colonna and the corporation (Finding #14), failure to document annual shareholder and director meetings (Finding #15), Colonna's total control over the corporation (Finding #16), that Colonna and the corporation engaged in the same business (Finding #17), that the corporation was undercapitalized (Finding #18), and that the corporation was "devoid of assets" (Finding #20). Although Colonna aggressively contests many of these findings on appeal, I do not find a basis to reverse them under our deferential standard of review on factual questions.

¶44    It is important to note, as the Court briefly mentions, that Colonna's professional corporation was not organized pursuant to the Montana Close Corporation Act, § 35-9-101, et seq., MCA. That Act authorizes a corporation organized thereunder to operate without observing "the usual corporate formalities or requirements relating to the exercise of its corporate powers," such as a board of directors, bylaws and annual meetings, and the failure to observe such formalities "is not a ground for imposing personal liability on the shareholders for liabilities of the corporation." Section 35-9-306, MCA. The legal analysis, and the effect of many of the District Court's above-referenced findings of fact regarding the absence of corporate formalities, would be much different if a statutory close corporation was at issue here.

¶45    The Court attempts to read support for the second prong of the test into the District Court's findings of fact, but does so erroneously. Referencing the District Court's finding that the corporation was undercapitalized, the Court makes comparison with *ECA Environmental Management Services, Inc. v. Toenyes* (1984), 208 Mont. 336, 679 P.2d 213.

18

In *Toenyes*, the trial court found that MMI, a parent company to ECA Environmental, took the assets from ECA Environmental, and concluded that ECA Environmental had "been controlled and used by MMI to avoid its contractual obligation with [Toenyes]." *Toenyes*, 208 Mont. at 345, 679 P.2d at 218.

¶46 The Court concludes therefrom that "[t]his is similar to what happened in the present case–the Corporation is incapable of satisfying the judgment against it because it was undercapitalized from its inception, suggesting that Colonna acted in bad faith." ¶ 35. However, the distinctions which make *Toeynes* inapplicable are obvious from the Court's own words. In *Toenyes*, ECA Environmental had not been undercapitalized "from its inception," but rather, was made that way by its parent company only to avoid debt. Here, there is no finding that Colonna placed the corporation into a state of undercapitalization in order to avoid a known debt. To the contrary, the District Court found that Colonna had transferred $190,000 into the corporation by way of personal loans.

¶47 Nonetheless, the Court finds that bad faith is "suggested" merely because the corporation "was undercapitalized from its inception." If "bad faith" means that a corporation undercapitalized from its inception has incurred debt which it may not be able to repay, then I suggest that the owners of countless start-up and young enterprises are acting in "bad faith" and will be surprised to learn that these circumstances could expose them to personal liability. Being "undercapitalized from its inception" is a common business problem and does not necessarily infer improper motives on the part of the corporation's principals.

19

¶48 In fact, our law requires more to establish bad faith. In *Stromberg v. Seaton Ranch Co.* (1972), 160 Mont. 293, 502 P.2d 41, also relied upon by the Court, the district court concluded that the defendant had acted in bad faith only after first finding that she had "exhibited an intention and design to exclude Matt Brown from further negotiations for the sale of the Seaton ranch to the Glacier Colony for the purpose of avoiding the payment of a real estate commission . . . ." *Stromberg*, 160 Mont. at 304, 502 P.2d at 47. Consistent therewith, we have also held that the absence of such a devious pre-debt design is fatal to a claim to pierce the corporate veil: "The control and ownership the Pearl Company exercised over relators existed prior to the violation alleged and it cannot be said that ownership and control was intended as a means to escape the law, perpetrate fraud, or justify wrong." *State ex. rel. Monarch Fire Ins. Co. v. Holmes* (1942), 113 Mont. 303, 309, 124 P.2d 994, 997.

¶49 The failure of the District Court to find the facts necessary to support the second prong of the test should not be remedied by factfinding by this Court. Because the record does not contain facts necessary to support the judgment, I would reverse.

/S/ JIM RICE

Chief Justice Karla M. Gray and Justice James C. Nelson join in the dissent of Justice Rice.

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON