

DA 09-0580

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 133

BOYNE USA, INC.,

      Plaintiff and Appellee,

  v.

LONE MOOSE MEADOWS, LLC and LONE
MOOSE MEADOWS CONDOMINIUMS UNIT
OWNERS ASSOCIATION, INC.,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV 29-2008-12
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Stephen R. Brown, Charles E. Hansberry, Elena J. Zlatnik; Garlington, Lohn
          & Robinson, PLLP, Missoula, Montana

      For Appellee:

          David M. Wagner, Crowley Fleck, PLLP, Bozeman, Montana

          Submitted on Briefs:  April 21, 2010

                    Decided:  June 9, 2010

Filed:

          _____
                       Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The Fifth Judicial District Court, Madison County, granted summary judgment in favor of Boyne USA, Inc. (Boyne), concluding that Lone Moose Meadows, LLC and Lone Moose Meadows Condominiums Unit Owners' Association, Inc. (collectively referred to as "Lone Moose") were obligated under the terms of a "Lift Operations Agreement" to pay Boyne for depreciation payments beginning in the 2002-2003 ski season. Lone Moose appeals.

## BACKGROUND

¶2 Boyne operates Big Sky Ski Resort. Lone Moose is a privately-owned residential development on the eastern boundary of the resort. Lone Moose constructed the Lone Moose ski lift to provide ski access from its condominiums to Big Sky's ski area. In 1999, Boyne and Lone Moose entered into a "Lift Operations Agreement" in which Boyne agreed to operate the Lone Moose ski lift and Lone Moose agreed to pay Boyne to operate the lift. Section 1(a) of the agreement discusses the terms of payment. It states, in pertinent part:

> The method of determining the amount due m [sic] shall be in accordance with the cost outline attached as Exhibit D and incorporated by reference. The amount of such payment is $78,250 for the 1999-2000 ski season. This amount does not include any amount for depreciation. [Lone Moose] shall not be required to pay any depreciation dollar component of the operating expenses until the 2002-2003 ski season.

Exhibit D, titled "Lone Moose Lift Expenses," listed the expenses as:

| Lift Criteria | Amount | Expense | |
| --- | --- | --- | --- |
| Value | $500,000 | Depreciation | 50,000 |
| 400 H.P. | .085KW/hp/hr | 130 days @ 7.5 hrs/day | 33,150 |

2

| 2.5 operaters[sic]/day | $30/hr | 130 days @ 9 hrs/day | 35,100 |
|---|---|---|---|
| Maintenance | $10,000 | Annual | 10,000 |
| | | | $128,250 |

The contract stated that "[r]eplacement lifts will be constructed and owned by Boyne." The contract also provided that if any dispute arose under the contract, the prevailing party would be entitled to reasonable attorney fees.

¶3 In December 2002, Boyne gave Lone Moose a Notice of Lift Operation Expenses for the 2002-2003 ski season. The Notice stated that Lone Moose was required to pay the depreciation operating expense set forth in Exhibit D. Lone Moose refused to pay the depreciation dollar component of the operating expenses. For the next several years, the parties attempted to resolve the handling of the depreciation payments.

¶4 Boyne filed its complaint in February 2008 for breach of contract because Lone Moose had not made any depreciation payments. Lone Moose moved for summary judgment, contending the contract had unambiguously stated that Lone Moose was not obligated to reimburse Boyne for depreciation on a lift it did not own. Boyne responded and filed a cross-motion for summary judgment, arguing that the contract had unambiguously established Lone Moose's obligation to make annual depreciation expense payments of $50,000 beginning with the 2002-2003 ski season, and Lone Moose had breached the contract by failing to make payments.

¶5 In May 2009, the District Court held a hearing on the summary judgment motions. Noting that the sole issue was the determination of when Lone Moose must start paying

$50,000 annually for depreciation, the court stated:

> What I parse out when I read [Section 1(a)] is that these are, in essence, two negatives. One is "not required," and the second is "until." Two negatives, as we are advised by mathematical calculation, reads positive. It reads then, as I interpret it, [Lone Moose] shall start paying in 2002-2003.

Ruling from the bench, the District Court granted Boyne's summary judgment motion and denied Lone Moose's motion.

¶6　　On appeal, both parties reiterate their arguments from the District Court. Both parties agree that the facts are not disputed and the contract is unambiguous, but disagree about what event triggers payment of the depreciation dollar component of Section 1(a). Boyne asserts that depreciation payments should have begun in the 2002-2003 ski season. Lone Moose asserts that depreciation payments are not due until Boyne owns the lift. Lone Moose also contends on appeal that no proper judgment was entered because the court did not give a specific dollar amount and, as a result, the matter should be remanded to the District Court to determine the specific amount of the judgment. In its response, Boyne requests its attorney fees incurred on appeal.

¶7　　We restate the issues as follows:

¶8　　Issue 1: Did the District Court err when it determined that the contract required Lone Moose to pay Boyne for "depreciation" beginning with the 2002-2003 ski season?

¶9　　Issue 2: Was a money judgment ever properly entered against Lone Moose when the District Court failed to specify the amount of the judgment?

¶10　　Issue 3: Is Boyne entitled to its attorney fees incurred on appeal?

**STANDARD OF REVIEW**

4

¶11    We review de novo a district court's grant of summary judgment, employing the same standards utilized by the district court pursuant to M. R. Civ. P. 56. *PPL Mont., LLC v. State*, 2010 MT 64, ¶ 84, 355 Mont. 402, ___ P.3d ___. Because we review a grant of summary judgment de novo, we need not defer to the judgments and decisions of the district court. *PPL Mont.*, ¶ 85.

## DISCUSSION

¶12    *Issue 1: Did the District Court err when determined that the contract required Lone Moose to pay Boyne for "depreciation" beginning with the 2002-2003 ski season?*

¶13    Lone Moose argues that "depreciation" should be applied under its technical tax definition—meaning that depreciation is only available to a taxpayer who has suffered an economic loss and erosion in the value of its own property—and because Boyne does not own the lift, it is not entitled to payments for depreciation. Lone Moose asserts that the contract's language that it "shall not be required to pay *any* depreciation dollar component of the operating expenses until the 2002-2003 ski season" means that, if Boyne had to replace the lift before the 2002-2003 ski season and the value of the lift depreciated, Lone Moose would not have to pay Boyne for depreciation until the 2002-2003 ski season. (Emphasis added.) That is, Lone Moose would have to pay Boyne for depreciation only after the 2002-2003 ski season and only if Boyne had replaced the lift and owned it.

¶14    "Where the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written." *Carelli v. Hall*, 279 Mont. 202, 209, 926 P.2d 756, 761 (1996). If the terms of the

5

contract are clear, "there is nothing for the courts to interpret or construe and the court must determine the intent of the parties from the wording of the contract alone." *Doble v. Bernhard*, 1998 MT 124, ¶ 19, 289 Mont. 80, 959 P.2d 488 (internal quotations omitted); *see also* § 28-3-303, MCA. Because we concur with the parties that the contract is unambiguous, our task is to determine the intent of the parties from the wording of the contract as to whether depreciation payments were triggered in the 2002-2003 ski season regardless of whether Boyne owned the lift at the time.

¶15 We reject Lone Moose's contention that depreciation should be applied as a technical term under its tax definition. If the parties intended the term "depreciation" to have a specific definition, the definition should have been included in the contract. Further, we are not convinced by Lone Moose's contention that no legal basis exists for Boyne to receive depreciation payments because it did not own the lift. The legal basis arises from the contract that Lone Moose signed agreeing to make payments for depreciation beginning in the 2002-2003 ski season.

¶16 Boyne asserts that because the lift began depreciating the day it was put into use, the depreciation payments were to offset the wear and tear on the lift and to facilitate Boyne's ability to construct a replacement lift when needed. However, the reasons why the parties agreed that Lone Moose would make "depreciation" payments are irrelevant. The contract is unambiguous. Thus, we simply ascertain and declare the terms of the contract. *Deschamps v. Treasure State Trailer Court*, 2010 MT 74, ¶ 28, 356 Mont. 1, ___ P.3d ___ (citing § 1-4-101, MCA). The wording of the contract shows that the parties agreed Lone Moose would

make $50,000 annual payments, which the parties agreed to call "depreciation." Lone Moose was "not required" to make these payments "until the 2002-2003 ski season."

¶17 Moreover, if we adopted Lone Moose's argument that the depreciation payment was not due until Boyne replaced the lift, we would have to insert language into the contract that is not present. Our job is to ascertain and declare what is in terms or in substance contained in the contract, not to insert what has been omitted or to omit what has been inserted. *Deschamps*, ¶ 28. The District Court did not err when it concluded that Lone Moose was obligated under the contract to pay $50,000 annually in depreciation beginning in the 2002-2003 ski season.

¶18 *Issue 2: Was a money judgment ever properly entered against Lone Moose when the District Court failed to specify the amount of the judgment?*

¶19 Lone Moose argues that no judgment was entered into the docket by the Clerk of Court.[1] It asserts that the District Court's judgment from the bench was improper because it did not include a specific dollar amount, as is required by § 25-9-203, MCA, which provides that judgments must be computed and stated as near as may be in dollars and cents. Lone Moose states that the purpose of this statute is so the "parties are certain of the final and accurate amount of the judgment." It points out that while it has stipulated to the dollar amount of prejudgment interest and attorney fees, the amount outstanding on the contract has not been determined.

---

[1] We note that the record contains a notice of entry of judgment from October 2008, stating judgment was entered on May 11, 2009, for the ruling from the summary judgment hearing, and on

¶20     In its ruling in May, the District Court clarified that the depreciation payments were to be made annually and for $50,000. The parties did not dispute this. The court then stated, "[the contract] reads then, as I interpret it, [Lone Moose] shall start paying in 2002-2003." After the hearing, the parties stipulated to the amount of attorney fees and prejudgment interest based on a $350,000 judgment. Boyne, concerned about Lone Moose's unwillingness to pay the judgment, filed for partial summary judgment on the request for attorney fees and prejudgment interest. Lone Moose opposed this motion, acknowledging that the matter had already been settled by the stipulation. The District Court, in an attempt to clarify the confusing procedural posture of the case at this point, entered an order confirming the amount of prejudgment interest and attorney fees. The court also ordered that the judgment was final unless Lone Moose requested a hearing before September 18, 2009. Lone Moose did not request a hearing.

¶21     The District Court stated that Lone Moose must pay Boyne $50,000 annually beginning in the 2002-2003 ski season. Lone Moose knew the specific amount owed under the contract when it calculated the prejudgment interest for the stipulation and failed to raise its objection regarding the entry of a specific money judgment at that time and for the next five months. We will not put a district court in error for a procedure in which the appellant acquiesced or participated, or to which the appellant made no objection. *Garrison v. Averill*, 282 Mont. 508, 514, 938 P.2d 702, 706 (1997); *see also State v. Burke*, 2005 MT 250, ¶ 18, 329 Mont. 1, 122 P.3d 427.

---

August 31, 2009, when the court entered its order regarding prejudgment interest and attorney fees.

¶22    *Issue 3:  Is Boyne entitled to its attorney fees incurred on appeal?*

¶23    Boyne requests an award of its reasonable attorney fees incurred on appeal because the agreement included a provision awarding attorney fees for disputes arising from the contract.  Lone Moose responds that Boyne's request is improper because it did not cross-appeal the issue and, regardless, the matter has already been resolved by stipulation.  We disagree.  Because our case law regarding the award of attorney fees incurred on appeal is somewhat inconsistent, we take this opportunity to clarify the issue.

¶24    We have previously recognized the confusion between two lines of cases regarding the award of appellate attorney fees.  *See R.C. Hobbs Enter., LLC v. J.G.L. Distrbg., Inc.*, 2004 MT 396, ¶¶ 49-50, 325 Mont. 277, 104 P.3d 503.  On one hand, we have occasionally examined whether it was clear from the language in a contractual provision whether the parties "obviously contemplated" awarding attorney fees on appeal.  *Transaction Network v. Wellington Techs.*, 2000 MT 223, ¶¶ 38-39, 301 Mont. 212, 7 P.3d 409; *Majers v. Shining Mountains*, 230 Mont. 373, 381, 750 P.2d 449, 454 (1988); *Hoven v. Amrine*, 224 Mont. 15, 18-19, 727 P.2d 533, 535 (1986); *Diehl & Assocs. v. Houtchens*, 180 Mont. 48, 53, 588 P.2d 1014, 1017 (1979).  Most recently, in *Peschel Family Trust v. Colonna*, 2003 MT 216, ¶ 45, 317 Mont. 127, 75 P.3d 793, we went so far as to state that "[a]n award of fees on appeal is not automatic."  We said that awarding attorney fees "arising out of a contract dispute are only appropriate when the contract contemplated that attorney's fees would be charged by the prevailing party on appeal."  *Id.*

A copy of the minutes from the hearing and the order were attached to the notice.

9

¶25 However, more often than not, we have awarded appellate attorney fees without discussing whether the contractual provision obviously contemplated awarding attorney fees on appeal. *E.g. Eschenbacher v. Anderson*, 2001 MT 206, ¶ 51, 306 Mont. 321, 34 P.3d 87; *Quigley v. Acker*, 1998 MT 72, ¶¶ 46-47, 288 Mont. 190, 955 P.2d 1377; *Chamberlin v. Puckett Constr.*, 277 Mont. 198, 210, 921 P.2d 1237, 1244 (1996); *Wise v. Sebena*, 248 Mont. 32, 40, 808 P.2d 494, 499 (1991); *Smith v. Johnson*, 245 Mont. 137, 145, 798 P.2d 106, 111 (1990); *Lauderdale v. Grauman*, 223 Mont. 357, 359, 725 P.2d 1199, 1200 (1986); *In re Marriage of Bolstad*, 203 Mont. 131, 135, 660 P.2d 95, 97 (1983).

¶26 Today we clarify that if a contract includes a provision stating that a prevailing party is entitled to reasonable attorney fees arising from litigation under the contract, appellate attorney fees are included under the provision. An appeal is simply another step in litigation and, as such, it is presumed that the contracting parties contemplate that an award of attorney fees would include fees on appeal.

¶27 Thus, because the contract between Boyne and Lone Moose provided, "[i]f any dispute arises under this Agreement the prevailing party shall be entitled to reasonable attorney's fees," Boyne is entitled to its reasonable attorney fees incurred on this appeal.

**CONCLUSION**

¶28 The District Court correctly concluded that the contract obligated Lone Moose to pay Boyne $50,000 annually beginning in the 2002-2003 ski season. We remand to the District Court to determine and award Boyne's appellate attorney fees.

¶29 Affirmed and remanded.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE MCGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE


Justice W. William Leaphart, dissenting.

¶30    I dissent.  The Court "rejects Lone Moose's contention that depreciation should be applied as a technical term under its tax definition."  Opinion, ¶ 15.  There is, however, nothing technical about Lone Moose's interpretation of the word "depreciation."  Even though we can assume that both these parties are familiar with the nuances of tax law, we need not turn to some arcane tax code to comprehend the meaning of the word "depreciation."  As defined in the *American Heritage Dictionary of the English Language* 502 (3rd Ed. Houghton Mifflin Co. 1992), it simply means "a decrease or loss on value, as because of age, wear or market conditions.  An allowance made for a loss in value of property."  The issue is whether it is reasonable or logical to interpret a contract in such a way that party A is deemed to have agreed to pay party B depreciation on property that party A owns.

¶31    The Court reasons that "[t]he parties agreed that Lone Moose would make $50,000 annual payments, which the parties agreed to call 'depreciation.'"  Opinion, ¶ 16.  "If the parties intended the term 'depreciation' to have a specific definition, the definition should

11

have been included in the contract." Opinion, ¶ 15. Although the Court tells us what depreciation is not, it fails to give us a positive and unambiguous definition of what it is. Apparently it is a meaningless label the parties arbitrarily chose to use. They could just as easily have called it "landscaping."

¶32 One has to assume that since the labeling under the contract has no intrinsic meaning, other aspects of Exhibit D (Lone Moose Lift Expenses) would be subject to the same "mere label" treatment. For example, the list of expenses includes 2.5 operator days for 130 days at 9 hours a day. If the ski season were cut short at 120 days by an early spring, the Court's approach would dictate that Lone Moose would still have to pay the agreed upon 130/day figure of $35,100. The fact that the actual expense was only for 120 days would be of no consequence since the 130/day description was merely a label that they agreed upon. All that matters is that one party, using one rubric or another, agreed to pay a sum of money to the other.

¶33 I disagree. Depreciation is not a meaningless label. It has a commonly accepted meaning and that meaning is not consistent with requiring Lone Moose to pay depreciation money to an entity which does not own the asset in question.

/S/ W. WILLIAM LEAPHART

Justice Brian Morris joins in the dissenting Opinion of Justice Leaphart.

/S/ BRIAN MORRIS

12