**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 22 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: YELLOWSTONE MOUNTAIN
CLUB, LLC,

       Debtor,

_____

TIMOTHY L. BLIXSETH,

       Plaintiff-counter-defendant -
Appellant,

  v.

BRIAN A. GLASSER, Successor Trustee
of The Yellowstone Club Liquidating
Trust,

       Defendant-counter-plaintiff -
Appellee.

No. 14-35395

D.C. No. 2:12-cv-00083-SEH

MEMORANDUM*

In re: YELLOWSTONE MOUNTAIN
CLUB, LLC,

       Debtor,

No. 14-35438

D.C. No. 2:12-cv-00083-SEH

_____

     *    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

TIMOTHY L. BLIXSETH,

             Plaintiff-counter-defendant - Appellee,

 v.

BRIAN A. GLASSER, Esquire, Successor Trustee of The Yellowstone Club Liquidating Trust,

             Defendant-counter-plaintiff - Appellant.

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 25, 2016
Pasadena, California

Before: KOZINSKI, PAEZ, and BERZON, Circuit Judges.

Timothy L. Blixseth appeals from a district court order affirming the bankruptcy court's judgment in favor of the Yellowstone Club Liquidating Trust ("YCLT"). YCLT appeals the order as well, because it affirmed the bankruptcy court's decision to reduce damages under the *in pari delicto* doctrine. We affirm the judgment in favor of YCLT and reverse the reduction in damages.

1.  There is no jurisdictional issue under *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

Blixseth intervened in the bankruptcy court proceedings, thereby "voluntarily appear[ing] . . . before the non-Article III adjudicator." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)). Even if Blixseth is correct that he could not give his knowing and voluntary consent before the case law made him aware of the jurisdictional issue, this Court's decision in *Marshall v. Stern*, 600 F.3d 1037 (9th Cir. 2010) gave Blixseth "ample reason to be alert to the possible jurisdictional problem." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 569 (9th Cir. 2012). That decision issued on March 19, 2010. Blixseth has not indicated that he objected to the court's jurisdiction at any point before October 12, 2011. So, Blixseth was "made aware of the need for consent and the right to refuse it" more than eighteen months before his objection, and he "still voluntarily appeared to try the case." *Wellness Int'l Network*, 135 S. Ct. at 1948 (quoting *Roell*, 538 U.S. at 590). Blixseth thereby consented to the bankruptcy court's jurisdiction.

2.  The liability releases in the Marital Settlement Agreement ("MSA") between Blixseth and his ex-wife, Edra Blixseth, constitute a fraudulent transfer

3

and so do not shield Blixseth from liabilities to YCLT.[1]  The record supports the bankruptcy court's finding that Blixseth obtained the liability releases in the MSA "with actual intent to hinder, delay, or defraud [a] creditor."  Mont. Code Ann. § 31-2-333(1)(a).  Actual fraud does not require a false representation; in the context of fraudulent transfers, "the fraudulent conduct . . . is in the acts of concealment and hindrance."  *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016).  Blixseth was an insider of the Club; he discussed with attorneys the possibility that his divorce settlement could lower his liabilities to the Club's creditors; and the Club did not receive anything approaching an equivalent value in return for the liability released in the MSA.  Blixseth's argument that Edra received valuable consideration in the divorce does not bear on whether *the Club* received anything of value in exchange for giving up its claims on Blixseth and his various corporate instruments.  The bankruptcy court did not clearly err in finding the MSA liability releases to be a fraudulent transfer based on actual fraudulent intent.

---

[1]There were several corporate entities created and owned or controlled by Blixseth whose claims are involved in this suit—Yellowstone Mountain Club, LLC; Yellowstone Development, LLC; Big Sky Ridge, LLC; and Yellowstone Club Construction Company, LLC.  For convenience, this disposition refers to them collectively as the Yellowstone Mountain Club, or simply "the Club."

3. The Club's claims against Blixseth for breach of his fiduciary duties are not time-barred. In Montana, a limitations period "does not begin on any claim . . . until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered" if "before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause." Mont. Code Ann. § 27-2-102(3). Blixseth's knowledge of his own self-dealing cannot be attributed to the Club. Moreover, were tolling necessary, under Montana law it is likely that the doctrine of adverse domination, or a similar doctrine, would toll the statute of limitations in these circumstances. *See* Mont. Code Ann. § 1-3-208; *FDIC v. Jackson*, 133 F.3d 694, 698 (9th Cir. 1998); *United States v. First Nat'l Bank & Tr. of Wibaux, Mont.*, No. CV 93-166-BLG-JFB, 1994 WL 775440, *6 (D. Mont. Sept. 8, 1994); *Mellem v. Kalispell Laundry & Dry Cleaners*, 237 Mont. 439, 442 (1989).

The Club's bankruptcy petition was filed on November 10, 2008. For claims that are not time-barred as of the filing of the petition, the Bankruptcy Code extends the limitations period until at least two years after the order for relief is entered. 11 U.S.C. § 108(a). The Club filed its claims against Blixseth on March 25, 2009, well within this extended window. Because the statute of limitations for the Club's fiduciary duty claims is three years, Mont. Code Ann. § 27-2-204(1),

5

the claims are not time-barred if they accrued after November 10, 2005. The record indicates the earliest the various claims against Blixseth might reasonably have been discovered is May, 2006, when the LeMond suit commenced. The Club's fiduciary duty claims, therefore, are not time-barred. *See* Mont. Code Ann. § 27-2-102(3).

4. Blixseth breached his fiduciary duties to the Club. The bankruptcy court did not clearly err in holding that Blixseth Group International ("BGI") and Blixseth were alter egos. *See Peschel Family Tr. v. Colonna*, 317 Mont. 127, 133-34 (2003), *abrogated on other grounds by Boyne USA, Inc. v. Lone Moose Meadows LLC*, 356 Mont. 408, 414-15 (2010); *Towe Antique Ford Found. v. Internal Revenue Serv.*, 999 F.2d 1387, 1391 (9th Cir. 1993). Blixseth therefore owed fiduciary duties to the Club as one of the Club's members, Mont. Code Ann. § 35-8-310(1), even though the Club was technically owned by BGI. In particular, Blixseth owed the entities a duty "to refrain from dealing with the company . . . as a person having an interest adverse to the company." *Id.* § 35-8-310(2)(b). He violated this duty by causing the company to take out an enormous loan and then transferring most of the money from that loan to himself. Such an action was clear "avarice, expediency or self-interest in derogation of [Blixseth's] duty of loyalty to the other stockholders and to the corporation." *Warren v. Campbell Farming*

6

*Corp.*, 363 Mont. 190, 203 (2011) (quoting *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 137 (1990)).

5. Blixseth's loan from the Club to himself was also a constructively fraudulent transfer. The Club did not receive "a reasonably equivalent value in exchange for the transfer." Mont. Code Ann. § 31-2-333(1)(b). Regardless of whether the loan was a wrongful distribution, it was structured with clearly unreasonable terms, and BGI's promissory notes were not a reasonable value in exchange. Blixseth did not include repayment terms on the loan, did not secure the loan, did not in fact repay most of the loan, and inserted BGI between himself and the Club to make the loan more difficult to collect. The Club was left with "unreasonably small" remaining assets with which to repay the Credit Suisse loan. Mont. Code Ann. § 31-2-333(1)(b)(i); *see also id.* § 31-2-333(1)(b)(ii) (a transfer is fraudulent if the debtor "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."). After a thorough review of the evidence, including the testimony of numerous experts, the bankruptcy court concluded that the Club was "doomed to fail." Its conclusion was not clearly erroneous.

6. The bankruptcy court erred when it applied the *in pari delicto* doctrine to reduce the damages owed to YCLT. First, it is unclear whether the doctrine can

7

apply in this context. In general, when the *in pari delicto* doctrine is applied to a trustee in bankruptcy, it is applied to counterbalance the wrongdoing of the underlying debtor. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 357-58 (3d Cir. 2001) (discussing cases). Here, the bankruptcy court applied the doctrine because of the wrongdoing of a group of creditors, Credit Suisse and the prepetition lenders.

We need not decide, however, whether the *in pari delicto* doctrine can apply in this context. Even presuming such an application is possible, the doctrine was not properly invoked here.

The *in pari delicto* doctrine bars recovery by a plaintiff who bears "at least substantially equal responsibility for his injury," and also has been applied to bar recovery "where the plaintiff has participated in some of the same sort of wrongdoing as the defendant." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (internal quotation marks and citations omitted). Neither of these conditions pertains to the lenders in this case.

The lenders may have been reckless in issuing their loans, but such wrongdoing is not comparable in degree or kind to Blixseth's wrongdoing. Blixseth defrauded the Club entities and their minority members, massively enriching himself; breached fiduciary duties; and then constructed barriers to

8

recovery of his ill-gotten gains by the subsequent fraudulent transfer in the MSA releases.

The lenders, in contrast, took inadequate precautions in their efforts to enrich themselves. Credit Suisse's behavior is somewhat more blameworthy than that of the other lenders, as it sold most of its interests in the loan to other lenders and obtained a substantial origination fee, thus raising the possibility that it intended to profit from a bad loan. Even so, Credit Suisse's behavior does not compare to Blixseth's intentional and prolonged flouting of the law. The bankruptcy court's application of equitable subordination, which placed the prepetition lenders last in line for recovery, addressed the lenders' poor conduct. As the Trustee has suggested, there may also be other remedies open to the district court on remand to assure fair treatment of Blixseth with regard to his debt to Credit Suisse.

7. The remainder of Blixseth's arguments are meritless. The case is remanded to the district court for a recalculation and award of damages consistent with this disposition.

AFFIRMED in part; REVERSED in part.